Reginald L. KEES; Joseph B. McCreary; Robert C. Niece; John C. Standley, Plaintiffs–Appellants,

v.

Arthur WALLENSTEIN, Director, King County Department of Adult Detention; Arthur and Jane Doe Wallenstein, a marital community; Michael Graber, Director of Operations, King County Department of Adult Detention; Michael and Jane Doe Graber, a marital community; Gary Locke, King County Executive; King County, a legal subdivision of the State of Washington, Defendants–Appellees.

No. 97–35559.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 4, 1998.

Memorandum Filed Aug. 17, 1998.

Decided Nov. 25, 1998.

Sidney J. Strong, Kimberly A. Konat, Strong & Konat, Seattle, Washington, for the plaintiffs-appellants.

Norm Maleng, King County Prosecuting Attorney, Diane Hess Taylor, Senior Deputy Prosecuting Attorney and Donald W. Heyrich, Deputy Prosecuting Attorney, Seattle, Washington, for the defendants-appellees.

Before: D.W. NELSON, KOZINSKI, and NOONAN, Circuit Judges.

### ORDER

The Memorandum disposition filed August 17, 1998, is redesignated as an authored Opinion by Judge D.W. Nelson.

### OPINION

D.W. NELSON, Circuit Judge:

Plaintiffs, former King County Jail corrections officers, appeal the district court's grant of summary judgment in favor of King County and various King County employees. Plaintiffs brought an action alleging that they were removed from their positions in violation of, inter alia, the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12213 (1994). Defendants maintain that plaintiffs are not qualified individuals under the ADA because their inability to have direct inmate contact prevents them from performing the essential functions of the corrections officer job. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

### Factual and Procedural Background

Robert Niece, Joseph McCreary, Reginald Kees, and John Standley (collectively "plaintiffs") were employed by the King County Department of Adult Detention ("DAD") as corrections officers at King County jail ("the jail"). All four plaintiffs allege that they have impairments that prevent them from having direct contact with inmates.

Niece started working as a corrections officer for the DAD in 1977. In 1984, he suffered severe neck and back injuries during a training exercise, and consequently was prevented from working for a year. Upon his return from work, Niece's physician advised that he have no direct contact with inmates because of the risk of subsequent injury and permanent paralysis.

McCreary began working as a corrections officer for the DAD in 1977. In August 1988, he suffered life-threatening injuries during an altercation with an inmate. In June 1989, his physician released him to work under the condition that he be assigned to a two-officer station to avoid another confrontation with an inmate.

Kees has worked for the DAD as a corrections officer since March 1988. When one of his right toes was amputated in 1991, his doctor restricted him to tasks not requiring direct inmate contact.

Standley has been working as a corrections officer for the DAD since 1972. In October 1994, he was diagnosed with a displaced vertebra, and his physician restricted him to light duty.

Until 1994, the DAD accommodated plaintiffs' limitations by assigning them exclusively to the control room, a post that is considered "light duty." Fifteen of the eighty-eight corrections officer posts are control room posts. There are ten types of posts, and corrections officers without medical restrictions are normally expected to rotate among the various posts.

According to the DAD, the duties of the control room post are as follows:

> Monitor video terminals, operate control panels and visually inspect to maintain security on a jail floor and control movement of inmates and authorized individuals to/from housing wing, recreation area, visitation area, medical treatment room, and elevator. Operate computer keyboard, answer telephones, communicate with inmates and other authorized individuals by speaker or telephone.

Inmates are not permitted access to the control room. Corrections officers at control room posts are not required to leave the control room except in cases of extreme emergencies. Moreover, in order to fully isolate plaintiffs from inmate contact, plaintiffs were not required to respond to emergencies or "codes" even while on break.

In 1990, Arthur Wallenstein became director of the DAD. It came to his attention that a number of corrections officers had been on light duty for extended periods of time. With the assistance of King County's Office of Human Resource Management ("OHRM"), Wallenstein set out to discover whether these employees' conditions were permanent. Plaintiffs informed Wallenstein that their conditions were permanent, and that no reasonable accommodation would allow them to have direct contact with inmates.

After determining that direct inmate contact is an essential function of the corrections officer position, OHRM and Wallenstein separated plaintiffs from their jobs as corrections officers. They were placed on medical leaves of absence and referred to King County's employment placement services for nine months of assistance in finding another County position. After the County's attempts at placing plaintiffs in other jobs were unsuccessful, Kees, McCreary, and Niece were terminated as King County employees. Standley resigned in January 1997.

In April 1995, plaintiffs' union, Public Safety Employees, Local 519, filed a grievance on behalf of the corrections officers "who have been notified that unless they obtain releases to return to full duty status, they will be separated from employment with the Department of Adult Detention." In June 1996, the County made a settlement offer. Each plaintiff was offered a DAD non-commissioned, support position such as office technician, jail receptionist, or jail aide, at the full corrections officer salary. Plaintiffs rejected these offers because primarily the positions required direct inmate contact.

In April 1996, plaintiffs filed suit against King County and several individual defendants (collectively "defendants") in King County Superior Court, alleging violations of the ADA, the Washington Law Against Discrimination ("WLAD"), and intentional and negligent infliction of emotional distress. Plaintiffs also brought claims against Wallenstein under 42 U.S.C. § 1983. Plaintiffs sought, inter alia, reinstatement to their corrections officers positions with one accommodation: permanent assignment to the control room.

Shortly after plaintiffs filed suit, defendants removed the case to federal court. On March 27, 1997, defendants filed a motion for summary judgment on all claims. On the same date, plaintiffs filed a cross-motion for summary judgment on their ADA and

WLAD claims. On May 14, 1997, the United States District Court for the Western District of Washington granted defendants' motion and denied plaintiffs' motion.

Plaintiffs appeal the district court's dismissal of their ADA and WLAD claims.

### Standard of Review

A grant of summary judgment is reviewed de novo. *See Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir.1997). The appellate court must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *See id.*

### Analysis

In order to prevail on their claim, plaintiffs must establish "(1) that [they are] disabled person[s] within the meaning of the ADA; (2) that [they are] qualified, that is, with or without reasonable accommodation . . . , [they are] able to perform the essential functions of the job; and (3) that the [County] terminated [them] because of [their] disability." *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir.1996) (citation and footnote omitted). The court decides plaintiffs' state antidiscrimination claims using the same analysis it uses to interpret federal antidiscrimination law. *See Sharpe v. American Tel. & Tel. Co.*, 66 F.3d 1045, 1050 (9th Cir.1995).

We agree with the district court that appellants are not qualified individuals with disabilities under the ADA. No accommodation would allow them to have direct inmate contact, an essential function of the corrections officer position. *See Kennedy*, 90 F.3d at 1481 (citing 42 U.S.C. § 12111(8)).

We have carefully considered each factor listed in 29 C.F.R. § 1630.2(n)(3)(1997) for determining whether a particular job function is essential. The record indicates that both the employer and the written job description identify inmate contact as a fundamental duty. Although corrections officers assigned to the control room are not expected to have inmate contact on a regular basis, plaintiffs acknowledged that some incidental contact is inevitable. Further, their ability to restrain inmates during an emergency is critical to jail security. In fact, several corrections officers testified that jail safety is currently jeopardized by appellants' inability to respond to emergencies. Finally, the relevant collective bargaining agreement indicates that King County corrections officers are expected to rotate among several positions, most of which require inmate contact.

AFFIRMED.