[No. C041708. Third Dist. July 22, 2003.]

WALTER W. HASTINGS, Plaintiff and Appellant, v.
DEPARTMENT OF CORRECTIONS, Defendant and Respondent.

964

COUNSEL

Law Offices of John C. Ferry and John C. Ferry for Plaintiff and Appellant.

Bill Lockyer, Attorney General, Andrea Lynn Hoch, Chief Assistant Attorney General, Jacob Appelsmith, Assistant Attorney General, Miguel A. Neri, Fiel D. Tigno and Jerry Curtis, Deputy Attorneys General, for Defendant and Respondent.

OPINION

**BLEASE, Acting P. J.**—Plaintiff Walter W. Hastings appeals from the granting of a summary judgment in favor of defendant California Department of Corrections (CDC or Department) in his suit for discrimination on the basis of his physical disability in violation of the California Fair Employment and Housing Act (FEHA). (Gov. Code, § 12940 et seq.)[1]

On appeal, plaintiff, a probationary candidate for correctional officer, disqualified by reason of knee injuries, contends he is entitled to reassignment to another position within the CDC, such as a data processor, as a reasonable accommodation for his physical disability.

We disagree because the FEHA, read in harmony with the civil service laws, requires accommodation only to a position within the same civil service classification for which he is a candidate. Because plaintiff seeks accommodation by reassignment to a different position within the CDC without complying with the civil service requirements for the position, his action must fail.[2]

---

[1] A reference to a section is to the Government Code.

[2] The plaintiff has made no claim for reasonable accommodation in the competitive civil service process for appointment to another position.

We will affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND[3]

Plaintiff applied for the position of correctional officer with the CDC. By letter dated January 25, 1995, the CDC gave him a conditional offer of employment for that position.[4]

The CDC requires a candidate for the position of correctional officer to complete training as a correctional cadet at the Basic Correctional Officer Academy (Academy). To successfully complete the Academy, a cadet is required to undergo rigorous physical training classes which include calisthenics, step aerobics, long distance running up to a mile and a half, interval sprinting of 220 and 440 yards, and weight room sessions, which may also include interval sprinting of 220 yards. Cadets are also required to pass an Emergency Response Simulation test.[5] The overall goal of the physical training is to bring the cadet to a physical condition that will enable him to perform the essential job functions of a correctional officer.

The CDC has determined the essential job functions of a correctional officer include, but are not limited to walking, running in an all-out effort from a few yards up to 400 yards, and ascending or descending a series of stairs or several tiers of stairs or ladders, while carrying various items, including other persons; crawling and crouching under an inmate's bed, or while firing a weapon, or searching for property; lifting and carrying from 20 pounds to 50 pounds frequently throughout the workday and up to 400 pounds occasionally; and overall body flexibility.[6] The CDC has determined

---

[3] The facts are essentially undisputed. Where they are not, we so state.

[4] Plaintiff disputes that the offer of employment was conditional; however, the substance of the letter was read into the record of his deposition and constitutes the only evidence of that offer. By its terms it is conditional: "Dear Correctional Officer Candidate: The California Department of Corrections is extending you *a conditional offer of employment to Correctional Officer. This offer, however, is contingent upon your successful completion of the remaining phases of the selection process.* Since this offer is conditional and the completion of the remaining phases can take several months, you should not give notice or resign if you are currently employed .... The remaining phases in the selection process which you must complete are: Vision Screening; Physical Abilities Test; Background Investigation and Preemployment Medical Examination." (Italics added.)

[5] This test consists of running, climbing stairs, twisting and turning through an obstacle course, and carrying weights totaling 90 pounds, 45 pounds, and 30 pounds each, over specified distances. The cadet is required to complete this test within 5 minutes and 5 seconds.

[6] Plaintiff disputes these requirements, arguing that the determination of an essential job function is "a highly fact-specific inquiry ...." (*Cripe v. City of San Jose* (9th Cir. 2001) 261 F.3d 877, 888, fn. 12.) ██ Although the essential functions of a job are a question of fact, plaintiff has failed to present any relevant facts that dispute the CDC's evidence on this issue and therefore has failed to raise a triable issue of fact on the question. Absent other evidence,

that these functions are necessary for the safety of the prison facility and that all correctional officers must be physically able to respond to emergency situations.

The correctional officer is expected to have the ability to work 24 hours at any post or any particular assignment or watch. No matter how isolated or apparently sedentary a correctional officer's principal assignment may be, each and every correctional officer must be able to perform the essential job functions, as any correctional officer may be called upon to respond immediately to any emergency situation, at any time, in the correctional facilities. The Academy training required by the CDC is necessary to identify those persons who can and cannot perform the essential job functions of a correctional officer.

Plaintiff commenced the six-week training course at the Academy as a correctional officer cadet on November 2, 1996. After two weeks of training, he suffered knee injuries while running, and was unable to complete the course. The cause of the injuries was due to a degenerative joint disease in both knees and was determined to be a permanent condition.

As a result of plaintiff's knee injuries, he is unable to meet the physical training requirements at the Academy because he is unable to walk more than a few yards without the use of a cane, he needs a knee brace to stand up for any extended period of time, he cannot climb up or down stairs without severe pain, he is unable to run, and is generally immobile.

Plaintiff's treating physician signed a permit releasing him to work for any type of work other than as a correctional peace officer cadet. Counsel for plaintiff requested an accommodation on plaintiff's behalf involving modified or alternate employment, suggesting a position in which he would be doing computer data entry.

CDC determined that plaintiff's permanent knee injuries precluded him from performing the essential job functions of a correctional officer and rejected him from probation pursuant to section 19173, on the grounds his condition prevented him from performing the essential duties of a correctional officer.[7]

---

we may properly rely on the employer's judgment and the written job description to determine the essential job functions. (§ 12926, subd. (f)(2)(A) and (B).)

[7] *Plaintiff disputed the stated fact "to the extent that there was a duty under State and CDC policy to engage in a dialogue regarding reasonable accommodation." He did not dispute the fact he was terminated for the stated reason.*

Plaintiff filed suit against the CDC, alleging, inter alia, unlawful disability discrimination and retaliation[8] and alleged that he requested an accommodation for an alternate position with CDC to which he never received a formal response.

Defendant moved for summary judgment on the grounds plaintiff cannot establish the prima facie elements of his claim and he is not entitled to a reasonable accommodation in the correctional officer position because no reasonable accommodation would enable him to perform the essential job functions of that position. The trial court granted defendant's motion, concluding that plaintiff is unable to establish a prima facie element of his claim because he cannot show he is qualified to be hired as a correctional officer.[9]

Plaintiff appeals from the order of dismissal following the granting of summary judgment.

## DISCUSSION

Plaintiff contends the basis for the trial court's ruling is in error because he was a qualified employee of the CDC when he was hired on January 25, 1995, and is entitled to a reasonable accommodation for his physical disability by reassignment to a vacant position within the CDC such as data processor.

CDC contends plaintiff cannot establish the prima facie element of his claim that he was qualified for the position of correctional officer and is not entitled to a reasonable accommodation, because even with an accommodation, he is unable to perform the essential job functions of a correctional officer. In a supplemental letter brief, the CDC contends that, interpreted in light of the civil service merit principle, accommodation by reassignment is not available to a probationary employee.

We agree that under the circumstances of this case, plaintiff is not entitled to a reassignment.

### A. Standard of Review

A motion for summary judgment shall be granted when "all the papers submitted show that there is no triable issue as to any material fact and the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc.,

---

[8] Plaintiff dismissed all claims from the complaint except the claims for disability discrimination and retaliation.

[9] The court dismissed plaintiff's retaliation claim on separate grounds. On appeal, plaintiff does not challenge this portion of the court's ruling.

§ 437c, subd. (c).) A moving defendant is entitled to judgment as a matter of law when one or more elements of the plaintiff's case cannot be established or there is a complete defense to that cause of action. (*Id.,* subds. (a), (o)(2); *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 356 [100 Cal.Rptr.2d 352, 8 P.3d 1089].)

On appeal after a summary judgment has been granted, we review de novo the trial court's decision to grant summary judgment and are not bound by the trial court's stated reasons. (*Hersant v. Department of Social Services* (1997) 57 Cal.App.4th 997, 1001 [67 Cal.Rptr.2d 483]; *Prilliman v. United Air Lines, Inc.* (1997) 53 Cal.App.4th 935, 951 [62 Cal.Rptr.2d 142] (*Prilliman*).) "We accept as true the facts alleged in the evidence of the party opposing summary judgment and the reasonable inferences that can be drawn from them. [Citation.] However, to defeat the motion for summary judgment, the plaintiff must show ' "specific facts," ' and cannot rely upon the allegations of the pleadings." (*Spitzer v. Good Guys, Inc.* (2000) 80 Cal.App.4th 1376, 1385 [96 Cal.Rptr.2d 236] (*Spitzer*.)

### B. PRIMA FACIE CASE UNDER THE FEHA

The FEHA makes it "an unlawful employment practice, unless based upon a bona fide occupational qualification ... [¶] [f]or an employer, because of the ... physical disability ... of any person, to refuse to hire or employ the person or to refuse to select the person for a training program leading to employment, or to bar or to discharge the person from employment or from a training program leading to employment ...." (§ 12940, subd. (a).) An employer is not prohibited "from refusing to hire or discharging an employee with a physical ... disability ... where the employee, because of his or her physical ... disability, is unable to perform his or her essential duties even with reasonable accommodations ...." (*Id.,* subd. (a)(1).)

The essential functions of a position are "the fundamental job duties of the employment position the individual with a disability holds or desires." (§ 12926, subd. (f).) The FEHA lists the evidence that may be considered in determining the essential functions of a job, which "includes, but is not limited to ... [t]he employer's judgment as to which functions are essential ... [and w]ritten job descriptions prepared before advertising or interviewing applicants for the job." (§ 12926, subd. (f)(2)(A) and (B); see *Kees v. Wallenstein* (9th Cir. 1998) 161 F.3d 1196, 1199.)[10]

---

[10] Section 12926, subdivision (f)(2) states in full:

"(2) Evidence of whether a particular function is essential includes, but is not limited to, the following:

"(A) The employer's judgment as to which functions are essential.

"(B) Written job descriptions prepared before advertising or interviewing applicants for the job.

■ To establish a prima facie case for discrimination under the FEHA, the plaintiff must prove he is qualified for the position for which an accommodation is sought. (*Quinn v. City of Los Angeles* (2000) 84 Cal.App.4th 472, 480 [100 Cal.Rptr.2d 914] (*Quinn*).) " 'The prima facie burden that rests upon plaintiff will depend on the facts. For example, if the adverse decision is a failure to hire or promote, the plaintiff has as part of his or her prima facie case, the burden of producing evidence that he or she was qualified for the employment or the promotion.' " (*Id.* at p. 481.)

The adverse decision in this case is plaintiff's rejection on probation and the CDC's failure to appoint him to the position of correctional officer. He therefore had the burden of producing evidence he was qualified for that position, at least with a reasonable accommodation, and it is undisputed that he was unable to do so.

Plaintiff was given a conditional offer of appointment as a correctional officer candidate and placed on probation. During his probationary term, he suffered permanent knee injuries that resulted in his failure to complete the prerequisite training and also made it impossible for him to perform the essential functions of the position for which he was hired.[11] Therefore, even if plaintiff was qualified for the position of correctional officer at the time he was given a conditional offer of employment (compare *Quinn, supra*, 84 Cal.App.4th at pp. 481–482), he failed to satisfy the prerequisites for permanent appointment to that position.

■ We conclude plaintiff has failed to establish a prima facie case that his rejection on probation because he is unable to perform the essential functions of a correctional officer (even with reasonable accommodation) constitutes disability discrimination.

### C. REASONABLE ACCOMMODATION

Nevertheless, plaintiff claims he was an employee of CDC when he was injured and there are no stated job limitations regarding physical mobility

---

"(C) The amount of time spent on the job performing the function.

"(D) The consequences of not requiring the incumbent to perform the function.

"(E) The terms of a collective bargaining agreement.

"(F) The work experiences of past incumbents in the job.

"(G) The current work experience of incumbents in similar jobs."

[11] Although plaintiff contends the CDC failed to meet its factual burden of proving he cannot perform the essential functions of the job, plaintiff's own physician found him unable to perform the duties of a correctional peace officer cadet. Moreover, by his claim he is entitled to reassignment to another position, plaintiff has impliedly conceded he is unable to perform the essential functions of a correctional officer.

applicable to the CDC's general workforce. For this reason he claims he is a qualified employee entitled to a reasonable accommodation, including reassignment or transfer to another position.

We disagree. ■ Plaintiff's entitlement to reassignment to another position as a reasonable accommodation for his disability turns on his employment classification. CDC did not hire him as a data processor or as an employee in its general workforce. Plaintiff was given a conditional offer of employment as a correctional officer. He accepted that offer, was placed on probation, and never demonstrated he was qualified for the position. In these circumstances he is not entitled to reassignment to another position with different qualifications within the CDC.

The FEHA requires an employer to "make reasonable accommodations for the known physical ... disability of an applicant or employee" (§ 12940, subd. (m)) unless the employer can demonstrate that doing so would impose an "undue hardship." (Cal. Code Regs., tit. 2, § 7293.9; *Spitzer, supra,* 80 Cal.App.4th 1376, 1383.) Both the FEHA and the implementing regulations set forth, by way of example, a list of reasonable accommodations, which include " [a]ccessibility ... [j]ob [r]estructuring ..., *reassignment to a vacant position,* part-time or modified work schedules, acquisition or modification of equipment or devices, adjustment or modification of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar actions." (Cal. Code Regs., tit. 2, § 7293.9, subd. (a), italics added; § 12926, subd. (n); *Spitzer, supra,* 80 Cal.App.4th at p. 1383.)

Whether a probationary employee is entitled under the FEHA to reassignment to a vacant position appears to be one of first impression. The predicate question is: to what position must the disabled employee be accommodated?

As noted, under the FEHA the position for which an accommodation is required is "the employment position the individual with a disability holds or desires." (§ 12926, subd. (f).) An employer is not prohibited "from refusing to hire or discharging an employee with a physical ... disability ... where the employee, because of his or her physical ... disability, is unable to perform his or her essential duties even with reasonable accommodations ...." (§ 12940, subd. (a)(1).)

■ The obligation to reassign a disabled employee who cannot otherwise be accommodated does "not require creating a new job, moving another employee, promoting the disabled employee, or violating another employee's rights under a collective bargaining agreement." (*Cassidy v. Detroit Edison Co.* (6th Cir. 1998) 138 F.3d 629, 634.) What is required is the "*duty* to reassign a disabled employee if an already funded, vacant position *at the*

*same level* exists." (*Spitzer, supra,* 80 Cal.App.4th at p. 1389, quoting *Mengine v. Runyon* (3d Cir. 1997) 114 F.3d 415, 419, second italics added; *McCullah v. Southern Cal. Gas Co.* (2000) 82 Cal.App.4th 495, 501 [98 Cal.Rptr.2d 208].)

■ The requirement that the vacant position for which reassignment is sought be "at the same level," as that for which the employee is a present candidate is specified in the Americans with Disabilities Act (ADA), upon which the FEHA is modeled.[12] (29 C.F.R. § 1630.2 app., p. 356 (2002) ["Employers should reassign the individual to an equivalent position, in terms of pay, status, etc., if the individual is qualified, and if the position is vacant within a reasonable amount of time"].) While neither the FEHA nor the implementing regulations speak to the issue, state constitutional and statutory laws governing civil service employees must be considered in determining that the vacant position is of the same level. This implicates the civil service classification from which the conditions for accommodation must be determined.

In state civil service, " '[c]lass' means a group of positions sufficiently similar with respect to duties and responsibilities that the same title may reasonably and fairly be used to designate each position allocated to the class and that substantially the same tests of fitness may be used and that substantially the same minimum qualifications may be required and that the same schedule of compensation may be made to apply with equity." (Gov. Code, § 18523.) This definition serves as a measure of that which must be accommodated.

Because of his disability, plaintiff is unable to perform the essential functions of a correctional officer, which require physical strength, endurance, agility, and mobility. (See *Diffey v. Riverside Co. Sheriff's Department* (2000) 84 Cal.App.4th 1031, 1039 [101 Cal.Rptr.2d 353] [recognizing unique skills including physical strength and mobility required by police work].) It is undisputed that plaintiff is barely mobile. Not surprisingly, plaintiff seeks

---

[12] The FEHA and the implementing regulations in the California Code of Regulations are modeled on the federal Rehabilitation Act of 1973 and the ADA of 1990. (*Spitzer, supra,* 80 Cal.App.4th at p. 1384.) While there are differences between the ADA and the FEHA (see *Bagatti v. Department of Rehabilitation* (2002) 97 Cal.App.4th 344, 358–363 [118 Cal.Rptr.2d 443]), both acts specify "reassignment to a vacant position" as a reasonable accommodation. (§ 12926, subd. (n)(2); 29 C.F.R. § .1614.203(g) (2001); 29 C.F.R. § 1630.2, subd. (o)(2)(ii) (2002).) ■ Where as here, the particular provision in question in the FEHA is similar to the one in the ADA, the courts have looked to decisions and regulations interpreting the ADA to guide construction and application of the FEHA. (*Prilliman, supra,* 53 Cal.App.4th at p. 948; *Richards v. CH2M Hill, Inc.* (2001) 26 Cal.4th 798, 812 [111 Cal.Rptr.2d 87, 29 P.3d 175]; *Cassista v. Community Foods, Inc.* (1993) 5 Cal.4th 1050, 1063 [22 Cal.Rptr.2d 287, 856 P.2d 1143].)

reassignment to a position which does not require physical mobility, such as a data entry position. A desk job involving full-time data entry would involve substantially different qualifications, duties, and tests of fitness than the position of a correctional officer, and therefore falls into a different class. The question then becomes whether plaintiff is entitled to be reassigned, as a reasonable accommodation, to a vacant position in a different class.

Whenever possible, we must interpret a statute in compliance with the constitution, construing it in a manner that renders it constitutional. (*Professional Engineers v. Department of Transportation* (1997) 15 Cal.4th 543, 591 [63 Cal.Rptr.2d 467, 936 P.2d 473].) We also must seek to harmonize overlapping statutory schemes "to give each one maximum possible effect." (*State Personnel Bd. v. Fair Employment & Housing Com.* (1985) 39 Cal.3d 422, 439 [217 Cal.Rptr. 16, 703 P.2d 354] (*State Personnel Bd.*); *People ex rel. Deukmejian v. County of Mendocino* (1984) 36 Cal.3d 476, 488 [204 Cal.Rptr. 897, 683 P.2d 1150]; *In re Keisha T.* (1995) 38 Cal.App.4th 220, 238 [44 Cal.Rptr.2d 822].)

Article VII, section 1, subdivision (b) of the California Constitution provides: "In the civil service permanent appointment and promotion shall be made under a general system based on merit ascertained by competitive examination." This principle was adopted by the voters in 1934 as article XXIV replacing the civil service laws with a new scheme. (*Pacific Legal Foundation v. Brown* (1981) 29 Cal.3d 168, 181–184 and fns. 6–8 [172 Cal.Rptr. 487, 624 P.2d 1215] (*Brown*).) "The purpose of this constitutional amendment is to promote efficiency and economy in State government. *The sole aim of the act is to prohibit appointments and promotion in State service except on the basis of merit, efficiency and fitness ascertained by competitive examination.* Appointments of inefficient employees for political reasons are thereby prohibited, thus eliminating the 'spoils system' from State employment." (Ballot Pamp., Proposed Amends. to Cal. Const. with arguments to voters, Gen. Elec. (Nov. 6, 1934), argument in favor of Prop. 7, p. 12; *Brown, supra,* 29 Cal.3d at p. 182–183.) " '[T]he cornerstone of the constitutional merit principle is [the] competitive examination process that determines merit, effectiveness and fitness for appointment and promotion. [Citations.]' " (*Alexander v. State Personnel Bd.* (2000) 80 Cal.App.4th 526, 542 [95 Cal.Rptr.2d 324], quoting *Lund v. California State Employees Assn.* (1990) 222 Cal.App.3d 174, 186 [271 Cal.Rptr. 425]; *Professional Engineers in Cal. Government v. State Personnel Bd.* (2001) 90 Cal.App.4th 678, 690 [109 Cal.Rptr.2d 375].)

In *State Personnel Bd., supra,* 39 Cal.3d 422, the Supreme Court held the FEHA applies to civil service employees and that the agencies charged with carrying out the act may constitutionally exercise jurisdiction over them. (*Id.*

at pp. 435, 444.) In so holding, the court rejected the State Personnel Board's claim the exercise of jurisdiction by the Department of Fair Employment and Housing and the Fair Employment and Housing Commission would threaten the merit principle. The Supreme Court harmonized the FEHA with the constitutional provisions and the state civil service statutory scheme, stating that "the principle of nondiscrimination [codified in the FEHA] reinforces the merit principle. The FEHA guarantees that non-merit factors such as race, sex, physical handicap, and the like, play no part in the appointment of civil service employees." (*State Personnel Bd.,* at p. 439.) The court reasoned that "the purpose of the Civil Service Act is to ensure that appointments to state office are made not on the basis of patronage, but on the basis of merit, in order to preserve the economy and efficiency of state service; and that by contrast, the purpose of the FEHA is to provide effective remedies for the vindication of constitutionally recognized civil rights and to eliminate discriminatory practices that violate those rights." (*Ibid.*)

However, the constitutional right protected is a right to a position for which one is qualified without discrimination by use of the factors considered under the FEHA. It is well established that civil service employees may not be appointed to positions in a different class without taking a competitive examination. (*Pinion v. State Personnel Board* (1938) 29 Cal.App.2d 314, 319–320 [84 P.2d 185]; *Allen v. State Board of Equalization* (1941) 43 Cal.App.2d 90, 93–94 [110 P.2d 73].) An employee may not be certified for appointment to a position in a different class unless he satisfies the requirement of the rule of three ranks. That rule provides in pertinent part: "there shall be certified to the appointing power the names and addresses of the three persons standing highest on the promotional employment list *for the class in which the position belongs* and who have indicated their willingness to accept appointment under the conditions of employment specified." (§ 19057, italics added.)

In consideration of these principles, we rejected a construction of a civil service statute by which a permanent civil service employee could move to a position in a different class without going through the competitive examination process. (*Noce v. Department of Finance* (1941) 45 Cal.App.2d 5 [113 P.2d 716].) Noce sought a writ of mandate under a provision of the Civil Service Act to require the State Personnel Board and the Department of Finance to permit him to qualify himself to hold the position of a separate higher paying classification and to pay him during the period of training at the higher rate of pay.

In rejecting his claim, we concluded that "section 157 of the Civil Service Act may not be construed, under the circumstances of these cases, to authorize the appointment or transfer of the petitioner Noce from his classification as platen pressman to that of lithographic offset pressman without the

competitive examination required by article XXIV [now article VII] of the Constitution." (*Noce v. Department of Finance, supra,* 45 Cal.App.2d at pp. 8–9.) We explained that "[o]rdinarily a civil service employee may not be transferred from one distinct classification to another without competitive examination. [Citations.] The only exception to that rule is when the duties, qualifications, responsibilities and salaries of the different classifications are substantially the same. [Citation.] We therefore refrain from holding that section 157 is unconstitutional.... [I]t certainly cannot apply to the training of an employee so that he may automatically be transferred from one classification to another, which requires different training, qualifications and duties without examination. That would be in direct conflict with the clear language and the very spirit of article XXIV of the Constitution. That would result in giving an employee an entirely new and different job for which he is not qualified, without competitive examination. That application of the statute would exclude from competition for appointment or transfer to the other classes of work requiring different qualifications men who might have had years of experience in operating the new machines, and who are much better qualified to fill the positions. That is the exact result the Constitution sought to prevent." (*Id.* at p. 10.)

Similarly, in *Professional Engineers in Cal. Government v. State Personnel Bd., supra,* 90 Cal.App.4th 678, this court upheld the Career Executive Assignment (CEA) program which provides for appointment to a high administrative and policy-influencing position, under which a permanent state employee may leave a regular civil service position for a CEA appointment after taking a competitive examination and qualifying for the appointment. We held that the CEA program does not generally contravene the "merit principle." (*Id.* at pp. 693, 706.) We rejected the claim a person holding one CEA position may not be transferred[13] to another CEA position " 'at substantially the same or lower level of salary' " without competitive examination. (*Id.* at pp. 703–704, 706.) We reasoned that requiring a second examination "does not invite spoils, but the efficient transfer of able CEA appointees." (*Id.* at p. 704.) We did invalidate two implementing regulations as contrary to the merit principle and competitive examination requirement, concluding that a non-CEA employee may not transfer into a CEA position without a competitive examination, and a competitive examination requires consideration of the relative merits of the competitors. (*Id.* at p. 706.)

■ Thus, consistent with the FEHA requirement that accommodation be measured by the requirements of the position for which accommodation is sought and the civil service provisions of the state Constitution, an employee is not entitled as an accommodation to reassignment to a position in a

---

[13] A " 'Transfer' " means "[t]he appointment of an employee to a position in a different class that has substantially the same level of duties, responsibility, and salary, as determined by board rule, under the same or another appointing authority." (§ 18525.3, subd. (b).)

different civil service classification without complying with the competitive examination process of the civil service laws.

 It is undisputed that as a result of his disability, plaintiff lacks sufficient physical strength, endurance and mobility to perform the essential functions of a correctional officer. Any position which he is capable of performing will involve substantially different qualifications and tests of fitness, placing the reassigned position sought in a different class. Plaintiff's entitlement to such a position must come by way of the competitive civil service examination process. (See *ante*, fn. 2.)

## DISPOSITION

The judgment is affirmed. Respondent is awarded its costs. (Cal. Rules of Court, rule 27(a).)

Nicholson, J., and Kolkey, J., concurred.

A petition for a rehearing was denied August 21, 2003, and appellant's petition for review by the Supreme Court was denied October 15, 2003. Baxter, J., did not participate therein.