Filed 1/14/21  Moreno v. Imperial Irrigation Dist. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| LETICIA MORENO, | D076386 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. ECU000120) |
| IMPERIAL IRRIGATION DISTRICT, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Imperial County, Jeffrey Bruce Jones, Judge.  Affirmed.

Sutherland & Gerber, and Lowell F. Sutherland for Plaintiff and Appellant.

Andrews Lagasse Branch & Bell, Margaret C. Bell, and Skylar R. Pascal for Defendant and Respondent.


I

INTRODUCTION

In this employment discrimination case, Leticia Moreno appeals a judgment entered after a bench trial in favor of her employer, Imperial

Irrigation District (IID) on her claims that IID failed to accommodate her medical disability and failed to reassign her to a position for which she believed she was qualified. Moreno contends there was no substantial evidence to support the trial court's conclusion that IID could not feasibly accommodate her restrictions in her former job as a mail services clerk. She also contends the court erred in granting judgment on the failure to reassign cause of action because IID failed to give Moreno priority and the court adopted job qualifications greater than those adopted before the job was advertised. We are not persuaded by Moreno's contentions. We conclude substantial evidence supports the court's finding that there was no feasible way for IID to accommodate Moreno's medical restrictions in her original position as a mail services clerk and Moreno did not meet the minimum qualifications for a position as a Human Resources (HR) Technician I. We, therefore, affirm the judgment.

## II

## BACKGROUND

### A

Moreno began working at IID in 1999 as part of a regional occupational program. She worked in an unpaid position in accounting for about eight months. Later, IID offered her temporary work in the human resources department. She entered application information into the computer, greeted customers, prepared interview packets, and updated policies and procedures. She also worked in finance and collections.

Moreno eventually obtained a position as a mail clerk in 2000, which she enjoyed. She held that position for 16 years.

B

Moreno's day consisted of driving to the post office to pick up mail. She took five to 13 trays of mail to the van and drove back to the office where she and another employee sorted the mail. Moreno then drove around the district delivering mail at various locations and returning interoffice mail. At the various locations within the district, she stacked trays on a rolling cart. The mail she picked up at the locations were in a pouch that varied in weight. According to Moreno, her duties included driving and walking as well as lifting items. At the end of the day, she picked up between three and 30 trays from the records department and took them back to the post office.

The bins were full at the post office and placed in a canvas cart with wheels. She believed she could have moved some items to other trays to accommodate her 15-pound weight restriction. It would increase the time she took to do the job, but she thought it would not be more than 15 minutes.

Part of the job involved taking bins with presorted customer bills from IID to the post office. She transferred these trays from a rolling cart into her van, which involved bending over to pull the tray from the cart and put it into the back of the van.

At the post office, she moved the trays onto a cart to take them into the office. Moreno agreed the bins at the post office can weigh 40 to 50 pounds when they are full. She also agreed her job description indicated employees must frequently lift or move up to 25 pounds and occasionally up to 40 pounds.

C

Moreno sustained some injuries to her shoulder lifting a cart. She lost six or seven months of work after her shoulder injury. In April 2013, her department accommodated restrictions prohibiting her from using her left

extremity for overhead work and lifting more than 20 pounds. Her boss had her perform other responsibilities. She did not do the regular mail route during that time; other employees did the mail route. After surgery, she eventually returned to full duty.

She also sustained a hernia on the job related to lifting boxes and bins. She again lost six or seven months of work and required surgery. She was off work the second half of 2015 due to her surgeries.

D

In February 2016, IID accommodated work restrictions of not lifting pushing, or pulling of more than 10 pounds. She received a light duty assignment in the safety department for a few weeks.

She returned to full duty work at the end of March 2016. A temporary employee helped Moreno lift trays in the afternoon, although she said she did not need help.

At the end of June 2016, a doctor again restricted her work to no lifting over 10 pounds, no straining, limit bending and twisting, and limit driving. She again went off work because they could not accommodate her.

In August 2016, a doctor provided a note saying she could return to work, but was not allowed to lift more than 15 pounds. The doctor stated this was a permanent restriction. Her supervisor said they could not accommodate the restriction. Moreno was very sad when she learned IID could not accommodate her in her mail clerk position.[1]

---

[1]    When Moreno was off work, a younger man performed her job for several months. He continued to do her job after the supervisor said they could not accommodate Moreno. He eventually obtained the job permanently.

4

## E

Moreno met with IID's disability management group in September 2016.  Her supervisor said they do a lot of heavy lifting in their department and Moreno was not going to be getting better.  Moreno acknowledged she was having pain and had difficulty performing her day-to-day duties.  She thought she could have continued to do the job if they had given her a chance.

Moreno agreed she was not able to lift more than 15 pounds.  She said her pain never went away and was getting worse.  She also said she was unable to do the things she used to do.  She had to be very careful with lifting things and it was hard to drive because it hurt to get in and out of a car.  It was also hard to bend.  She acknowledged that her duties as a mail service clerk required her to lift over 15 pounds, even if she just worked in the office.  She did not suggest having someone else lift or shift the mail around to reduce its weight.

Since Moreno's supervisor could not accommodate her restrictions, the disability management team indicated they would assist her in looking for a new job.  Thereafter, she received a list of open job postings within IID.  She performed poorly on tests of her computer and keyboarding skills.

At another disability management assessment meeting in December 2016, Moreno said she was in constant pain that was increasing.  She did not believe she could perform regular duties at work and could not lift more than 15 pounds.

Another doctor placed her off work in January 2017 and did not release her to return to work until the end of October 2017.  However, her restrictions were no lifting, no repetitive bending, no prolonged standing more than 30 minutes, no repetitive stooping, and no twisting movement.

Moreno agreed these were strict restrictions and she probably could not perform her job as a mail services clerk.

Moreno received a job offer for a senior clerk position in the records management department in 2017. She declined the offer because she did not want to work in that department.

Her doctor clarified in December 2017 that she should have no prolonged sitting or standing, frequent breaks, no bending or stooping, and no lifting over 20 pounds. In January 2018, in response to Moreno's request, her doctor again clarified that she should not stoop or bend, she should have a break every 45 minutes, she should not have prolonged sitting or lifting heavier than 20 pounds.

Moreno saw a posting for an HR Technician I, which required "[h]igh school equivalency with supplemental college courses in business and three years of [i]ncreasingly responsible complex experience related to human resources function." It also required specific skills and experience working with computer software programs, including one known as E-Recruitment.

Moreno did not have three years of experience in human resources, but thought she had relevant knowledge and experience in attending to applicants, answering questions about the job, and processing applications. She thought she could learn the computer system. She did not have experience working with E-Recruitment.

Moreno submitted a resume and attended a prescreening interview where they reviewed her experience. She was told other applicants had more experience and qualifications. She did not receive an offer for that job. An IID manager stated Moreno did not meet the minimum qualifications for the job. She lacked the three years of experience in human resource functions. Moreno had only three and a half months of experience working as a

6

temporary clerk in human resources in 1999.  It was clerical, not complex human resources work.  She also had some experience entering data for accounting.  However, the majority of her experience was delivering mail.

Another applicant had worked in the human resources department as a temporary employee assisting with job applications.  She had been doing similar tasks to the job posting for a little less than two years at IID.  The other applicant also had relevant experience after she worked in another department at IID as well at a previous job.  They also considered the fact that she had a master's degree.

Moreno accepted an offer as a clerk senior, which she started on January 8, 2018.  The department provided certain accommodations such as parking closer to the building, providing a stand-up desk, and rearranging her work station.  She liked her job and her boss and remained in that job at the time of trial.

F

Moreno sued IID for employment discrimination alleging IID discriminated against her based on her age, disability, or medical condition in violation of the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).  She also alleged IID failed to reassign her to a position for which she was qualified and, instead, filled the position with a younger person.  She claimed she suffered financial consequences as a result of the loss of her job and grade.  She also experienced depression and anxiety.

The case proceeded to a bench trial.  At the close of Moreno's case, the trial court granted a defense motion for judgment pursuant to Code of Civil Procedure section 631.8 as to the claims of age discrimination and failure to accommodate.  It denied the motion for judgment as to the reassignment claim pending further briefing.  After further briefing and argument, the

7

court issued a statement of decision concluding IID did not discriminate against Moreno based on age, Moreno did not meet her burden of establishing IID failed to provide reasonable accommodation because there was no reasonable accommodation that would allow her to return to her job as a mail clerk, and Moreno did not meet her burden to establish IID failed to reassign her to the position of HR Technician I because Moreno was not qualified for the position.[2]

## III

## DISCUSSION

## A

### *Standard of Review*

"If the trial court determines at the conclusion of the plaintiff's case-in-chief that the plaintiff has failed to meet the burden of proof, Code of Civil Procedure section 631.8 allows the court to forgo the need for the defendant to present evidence. [Citation.] 'The substantial evidence standard of review applies to judgment given under Code of Civil Procedure section 631.8; the trial court's grant of the motion will not be reversed if its findings are supported by substantial evidence. [Citation.] Because section 631.8 authorizes the trial court to weigh evidence and make findings, the court may refuse to believe witnesses and draw conclusions at odds with expert opinion. [Citation.]' " (*Higgins v. Higgins* (2017) 11 Cal.App.5th 648, 658.)

The court here memorialized its findings on all causes of action in a statement of decision. " 'In reviewing a judgment based upon a statement of decision following a bench trial, we review questions of law de novo. [Citation.] We apply a substantial evidence standard of review to the trial

_____

[2] Moreno does not challenge the court's finding on the age discrimination claim in this appeal.

8

court's findings of fact.' [Citation.] In applying a substantial evidence standard of review, ' " '[I]t is not our role to reweigh the evidence, redetermine the credibility of the witnesses, or resolve conflicts in the testimony, and we will not disturb the judgment if there is evidence to support it.' " [Citation.] Where multiple inferences can be drawn from the evidence, we defer to the trial court's findings.' " (*Aljabban v. Fontana Indoor Swap Meet, Inc.* (2020) 54 Cal.App.5th 482, 496.)

B

*No Failure to Accommodate for Mail Clerk Position*

FEHA "prohibits an employer from 'fail[ing] to make reasonable accommodation for the known physical or mental disability of an … employee.' … A reasonable accommodation is 'a modification or adjustment to the workplace that enables the employee to perform the essential functions of the job held or desired.' " (*Lui v. City and County of San Francisco* (2012) 211 Cal.App.4th 962, 971.)

Moreno contends that the court erred in concluding Moreno could not do her job with reasonable accommodation. She specifically contends she could have adjusted the weight of the trays at the post office and at the various locations she picked up mail to accommodate her restriction of not lifting more than 15 pounds. She claims she should have been allowed to try to do so.

First, we note Moreno did not suggest this accommodation to IID during the interactive process. " 'An employee cannot demand clairvoyance of his employer.' [Citation.] ' "Where the disability, resulting limitations, and necessary reasonable accommodations, are not open, obvious, and apparent to the employer," ' … the employee bears the burden ' "to specifically identify the disability and resulting limitations, and to suggest the reasonable

9

accommodations." ' " (*Doe v. Department of Corrections & Rehabilitation* (2019) 43 Cal.App.5th 721, 738–739, italics omitted.)

Nevertheless, the court considered and rejected this argument as not feasible based on the evidence. The court found it would require the cooperation of individuals outside of IID's control to accommodate Moreno's restrictions, specifically individuals at the post office. The court found unpersuasive Moreno's self-serving testimony that individuals at the post office would arrange the trays for pick-up on a table for her convenience rather than in a canvas cart. Moreno presented no other evidence this was possible. The court also thought it was not realistic that Moreno could rearrange the contents of the post office bins without bending and reaching into the carts. Finally, the court noted she would not know the weight of packages at the post office before arriving and bringing someone else along to perform these tasks would eliminate an essential job function.

Moreno tried to minimize the need to lift packages saying she thought she never lifted a package weighing 15 pounds. However, "[w]e may not reweigh the evidence and are bound by the trial court's credibility determinations." (*Estate of Young* (2008) 160 Cal.App.4th 62, 76.)

Additionally, the court concluded Moreno was optimistic about the time it would take for her to rearrange the numerous mail trays she transported to accommodate the 15-pound restriction. It also found requiring other individuals at the 30 plus locations where she picked up mail to change their practices to accommodate Moreno's restrictions would require significant retraining and an expenditure of time by other IID employees. In the accounting department, for example, the court noted that accommodating Moreno's restrictions reducing the weight in trays could violate federal regulations for filling postal trays completely by zip code and using as few

10

trays as possible. The court stated, "The reality is that [IID] cannot guarantee this can be sustained and that [Moreno] will not have to lift over 15 [pounds], with everyone getting their work done on time."

We conclude there was substantial evidence to support the court's findings that no reasonable accommodation would allow Moreno to return to her job as a mail clerk and, therefore, Moreno did not meet her burden of establishing a failure to accommodate.

C

*No Failure to Accommodate by Reassignment*

Reasonable accommodations under FEHA include " '[j]ob restructuring, part-time or modified work schedules, *reassignment to a vacant position, …* and other similar accommodations for individuals with disabilities.' " (*Swanson v. Morongo Unified School Dist.* (2014) 232 Cal.App.4th 954, 969 quoting Govt. Code, § 12926, subd. (p), italics added.) "FEHA does not require reassignment if there is no vacant position the employee is qualified to fill." (*Atkins v. City of Los Angeles* (2017) 8 Cal.App.5th 696, 721.)

Moreno contends the court erred in concluding she did not meet the minimum qualifications for the job of HR Technician I. She claims the court erroneously considered the job posting to determine the minimum qualifications for the job. We disagree.

"The essential functions of a position are 'the fundamental job duties of the employment position the individual with a disability holds or desires. ([Gov. Code,] § 12926, subd. (f).) The FEHA lists the evidence that may be considered in determining the essential functions of a job, which 'includes, but is not limited to … [t]he employer's judgment as to which functions are essential … [and w]ritten job descriptions prepared before advertising or interviewing applicants for the job.' " (*Hastings v. Department of*

11

*Corrections* (2003) 110 Cal.App.4th 963, 970, citing Govt. Code, § 12926, subd. (f)(2)(A) and (B).)  Given the broad wording of the statute, we cannot agree with Moreno's contention that it precludes consideration of the qualifications listed in job descriptions prepared for a job posting.

The court here considered the formal job description, the job posting announcement, and the testimony of personnel from the human resources department regarding the minimum qualifications for the job.  The court summarized the minimum requirements as including "1. High School Equivalency; [¶] 2. Supplemental College Courses in Business; [¶] 3. 3 years of increasingly responsible complex experience related to HR; [¶] 4. Experience with SAP and E-Recruitment or similar software; and [¶] 5. A Driver's License."

Moreno contends she met the requirement for supplemental college courses in business because she took some units of business administration and accounting.  Even if we were to consider this evidence as meeting minimum qualifications, Moreno did not meet other minimum qualifications.

Moreno lacked the three years of "increasingly complex experience related to HR."  The evidence presented by IID was that Moreno's three months of experience in human resources was not sufficient for the job.  Although the court found the other candidate's experience in this area short of the requirement as well, it found she was much closer to the qualification than Moreno.

Additionally, the court found persuasive the testimony of the person in charge of hiring for the position.  That person testified that the fundamental qualifications for the position required knowledge of computers, spreadsheets, word processing, and the E-Recruitment software.  Moreno lacked fundamental computer skills, including experience with the E-

12

Recruitment software.  She scored poorly on tests for basic typing, word processing, and spreadsheets.  The court noted she would require months of training to become acceptably competent and "on the job" training would be wasteful and illogical when experience in this regard was included as a minimum qualification.

Substantial evidence supported the court's conclusion that IID was not obligated to offer Moreno the position of HR Technician I because she was not qualified for the position.  Therefore, she was not entitled to priority.

IV

DISPOSITION

The judgment is affirmed.  Respondent shall recover its costs on appeal.


McCONNELL, P. J.

WE CONCUR:


HALLER, J.


AARON, J.