[No. B128454. Second Dist., Div. Four. Oct. 30, 2000.]

EUGENE QUINN, Plaintiff and Respondent, v.
CITY OF LOS ANGELES, Defendant and Appellant.

**COUNSEL**

James K. Hahn, City Attorney, Cecil W. Marr, Assistant City Attorney, and Gregory P. Orland, Deputy City Attorney, for Defendant and Appellant.

Law Offices of Paul A. Greenberg, Paul A. Greenberg, Iris Weinmann; and Joseph Posner for Plaintiff and Respondent.

## OPINION

## VOGEL (C. S.), P. J.—

### INTRODUCTION

Plaintiff Eugene Quinn applied to be hired as a Los Angeles City police officer. He failed the medical exam because of a significant hearing impairment. However, due to a clerical error, he was notified to report for further tests. He passed those tests, was admitted to and graduated from the Police Academy, and was assigned to patrol duty. While a probationary patrolman, his hearing problem manifested itself in several ways, resulting in his eventual assignment to desk duty. After another hearing exam revealed his hearing impairment, the Los Angeles Police Department (LAPD) terminated him while he was still a probationary employee.

Plaintiff sued the City of Los Angeles (City) and went to trial on the theory his discharge constituted illegal disability discrimination in violation of the California Fair Employment and Housing Act (FEHA). (Gov. Code, § 12900 et seq.) City unsuccessfully moved first for a nonsuit and later for a directed verdict on the theory plaintiff had failed to establish a key element of his prima facie case: his qualification to be hired as a police officer. City relied upon the uncontested facts that plaintiff had failed the initial physical (hearing) exam and that passing that exam was a condition precedent to acceptance as a recruit into the LAPD. In other words, City claimed plaintiff could not have been wrongfully discharged because he was not even qualified to be hired for the position. The court denied both of those motions.

As framed by the jury instructions and special verdict form, the issues for the jury were whether plaintiff had been terminated because of a disability and, if so, whether City had discharged its burden of showing no reasonable accommodations were available or that retaining plaintiff as a police officer created a danger.[1] The jury found in favor of plaintiff and awarded him

---

[1] Although plaintiff's complaint alleged a cause of action for promissory estoppel, the trial court sustained without leave to amend City's demurrer to that cause of action. Consequently, plaintiff did not proceed to trial on the theory that LAPD was "estopped" from terminating him or that he had "detrimentally relied" upon the job offer.

In addition, the trial court sustained without leave to amend City's demurrer to the causes of action for breach of express and implied contract, breach of the implied covenant of good faith and fair dealing, negligence, negligent misrepresentation, and negligent infliction of emotional distress.

$200,000. Thereafter, the court awarded plaintiff costs and attorney fees in excess of $300,000. This appeal by City follows.[2]

We conclude the trial court erred in denying City's motion for a directed verdict. Simply stated, plaintiff failed to produce evidence on a critical element of his claim: his qualification to be hired as a police officer. "That seems to us to be the common sense of the matter; and common sense often makes good law." (*Peak v. United States* (1957) 353 U.S. 43, 46 [77 S.Ct. 613, 615, 1 L.Ed.2d 631].) We therefore reverse with directions to enter judgment in favor of City.

### FACTUAL AND PROCEDURAL BACKGROUND

Our discussion is limited to giving context to the basis of our reversal: plaintiff's inability to qualify to be hired as police officer. Consequently, we omit discussion of the bulk of the evidence offered on other issues such as what City could have done to accommodate plaintiff. As we shall explain, that evidence is irrelevant: City had no obligation to accommodate him because he did not meet the minimal qualifications (sound hearing) to be hired for the position.

At the age of 44, plaintiff quit his job in the money brokerage business and applied to the LAPD. At the time he applied, he knew he had a hearing impairment in his left ear. At trial, he testified: "I cannot hear out of it [the left ear]" and conceded this impairment substantially affected a major life activity.

When he submitted his written application to LAPD, he disclosed the hearing impairment. At his physical examination, a hearing test indicated "moderate to severe hearing loss in the left ear." Thereafter, a sound localization test was administered which determines an individual's ability to determine the direction from which a sound is coming. The ability to localize sound is particularly significant to police officers in split second, life-threatening situations when an officer cannot clearly see. Plaintiff failed the sound localization test. Dr. Goldberg, an assistant medical director for City, testified that "based on this test, I did not feel comfortable making the assessment that his ability to localize sounds in a split second or in a life threatening situation would be normal. I had to conclude that his localization would be subject to errors and that failure to perform as such represented an imminent and serious hazard, both to himself and others, other officers and

---

[2]Initially, there were two separate appeals, one from the judgment and another from the postjudgment order awarding costs and attorney fees. The two have been consolidated for disposition.

members of the public, if he were to be employed as a police officer. Therefore, I unfortunately had to fail him on his medical exam."

In April 1995, City sent plaintiff a letter notifying him that he would be removed from the candidates' list because he had failed the sound localization test. Plaintiff was disappointed but set about to find another career.

However, soon thereafter, plaintiff received another letter, directing him to appear at the Police Academy for a physical abilities test. It is uncontested that this letter was sent in error. The genesis of the error was the fact a city clerk mistakenly input into the computer the entry that plaintiff had *passed* the medical exam. Recognizing the mistake, plaintiff telephoned to ascertain his status, explaining he had failed the sound localization test. The person he spoke with utilized his Social Security number to access the erroneous information entered in the computer and consequently (incorrectly) informed him he had passed his medical exam. Plaintiff testified: "So I figured, 'Well, maybe, you know, you can fail a portion of the test but overall pass' or maybe they had another position in mind for me. I wasn't sure what was going on, but I was happy to receive this news."

Plaintiff passed the physical abilities and psychological tests, cleared the background check, and was accepted into the Police Academy. He graduated in the top quarter of his class in March 1996 and was assigned as a patrol officer. His first two performance evaluations were unsatisfactory. Subsequent evaluations were "mixed," as plaintiff's hearing impairment manifested itself in terms of inability to hear the radio, the Mobile Display Terminal, or his partner's instructions. He was given a portable radio with a shoulder microphone which somewhat alleviated the problem.

In May 1996, plaintiff was removed from the field and assigned to a desk job because of his demonstrated difficulty in hearing. A hearing test was administered which showed a "very significant" hearing loss. Dr. Jothan Staley testified "[t]he performance issues that were raised were those that could definitely cause danger to [plaintiff], could endanger co-workers should he not hear some critical piece of information, and definitely could endanger the public."

In September 1996, plaintiff, while still on probationary status, was terminated. A subsequent letter from the LAPD explained: "You were medically removed from the Department for failing to meet the requirements established by the California Commission on Police Officer Standards and Training (POST). . . . [¶] '[T]he Department must rely upon the standards established by POST regarding the selection and training of peace officers."

At trial, to show that he was otherwise qualified for the position, plaintiff offered the testimony of Los Angeles Police Officer Robert Grant, a field training officer who had worked with him. Officer Grant testified plaintiff "performed very well" and was "making satisfactory progress" as a probationer. In Officer Grant's opinion, plaintiff's hearing impairment did not "affect[] his job at all," plaintiff "did not compromise the safety of myself or any other person," and were plaintiff still on the force, "he would be doing very well today and he'd be serving the citizens of Los Angeles extremely well." On cross-examination, Officer Grant conceded he and plaintiff had only worked together in a patrol car on two occasions but nonetheless claimed he had more than 20 opportunities to observe plaintiff work as a police officer.

At the close of the liability phase of the trial, City renewed its motion for a nonsuit and moved for a directed verdict.[3] One basis of its motion was that plaintiff was not physically qualified to be hired as a police officer because he had failed the initial hearing test. The court denied the motion. It explained: "And the problem I have is Officer Grant has testified as a trained officer and he has created a triable issue of fact and I have it before me and the . . . jury is going to have to decide. And it goes to whether or not he [plaintiff] is occupationally qualified and you [City] have presented evidence from the doctors [and officers who worked with or supervised plaintiff] and you present all that evidence to the effect he was not occupationally qualified. . . . [¶] . . . [¶] The point is, I have a triable issue of fact. . . . [¶] . . . I am not giving in [the] case by the way of summary judgment."

At the close of trial, the court submitted BAJI No. 12.12 which defines the elements of disability discrimination. The instruction provides:

"The essential elements of a claim for unlawful disability discrimination are:

"1. Plaintiff is an individual with a physical disability;

"2. Defendant was an employer;

---

[3]At the close of plaintiff's case-in-chief, City moved for a nonsuit on the basis plaintiff was not even qualified to be hired as a police officer. The court denied the motion. It ruled: "Now, the only evidence I have is a severe hearing loss, but that doesn't establish whether or not, contrary to what counsel read, whether or not he is qualified and able to accept a job. . . . [A]t this time there's a triable issue of fact as to whether or not his hearing loss was sufficient to deny him the position, and for that reason denied."

Thereafter, City presented its defense case, including evidence that passing the hearing test is a condition precedent to being hired. City also explained how and why plaintiff had been erroneously hired.

"3. Plaintiff was an employee of the defendant;

"4. Defendant denied in whole or in part an employment benefit to the plaintiff;

"5. The plaintiff's disability was a motivating factor of this denial.

"A motivating factor is something that moves the will and induces action even though other matters may have contributed to the taking of the action." The court further instructed the jury that were it to find that disability discrimination had been established, it was City's burden to establish the affirmative defense that either City had made reasonable but unsuccessful efforts to accommodate plaintiff or the discrimination was necessary to protect the health and safety of plaintiff or others.

As set forth in the special verdict, the jury was required to answer only two questions.

The first was: "Did the plaintiff, Eugene Quinn, prove by a preponderance of the evidence that he has a physical impairment that limits one or more of his major life activities?" The jury answered "Yes."

The second was: "Did the defendant, City of Los Angeles, prove by a preponderance of the evidence its defense that it made reasonable accommodations for plaintiff's disability, and the plaintiff, Eugene Quinn, could still not perform the essential functions of his job in a manner which would not endanger his health or safety or the health or safety of others?" The jury answered "No."

The damages phase of the trial was then conducted. The jury awarded $200,000: $140,000 in economic damages and $60,000 in noneconomic damages.

In a later proceeding, plaintiff sought costs and attorney fees. The court awarded him $17,207.26 in costs and $304,881.50 in attorney fees.

### DISCUSSION

██ In ruling upon a defense motion for a directed verdict, the trial court is guided by the same standard used in evaluating a motion for a nonsuit. (*Estate of Fossa* (1962) 210 Cal.App.2d 464, 466 [26 Cal.Rptr. 687].) "A defendant is entitled to a nonsuit if the trial court determines that, as a matter of law, the evidence presented by plaintiff is insufficient to permit a jury to

find in his favor. [Citation.] 'In determining whether plaintiff's evidence is sufficient, the court may not weigh the evidence or consider the credibility of witnesses. Instead, the evidence most favorable to plaintiff must be accepted as true and conflicting evidence must be disregarded. The court must give "to the plaintiff['s] evidence all the value to which it is legally entitled, . . . indulging every legitimate inference which may be drawn from the evidence in plaintiff['s] favor." ' [Citation.] A mere 'scintilla of evidence' does not create a conflict for the jury's resolution; 'there must be *substantial evidence* to create the necessary conflict.' [Citation.]" (*Nally v. Grace Community Church* (1988) 47 Cal.3d 278, 291 [253 Cal.Rptr. 97, 763 P.2d 948].)

■ On this appeal, the real bone of contention is whether or not plaintiff was required as part of his prima facie case to establish that he was qualified to be hired as a police officer. As we now explain, he was required to and failed to make that showing.

Recent decisional law is replete with the statement that in order to establish a prima facie case for discrimination based upon violation of the FEHA, the plaintiff must prove he was qualified for the position. (See, e.g., *Deschene v. Pinole Point Steel Co.* (1999) 76 Cal.App.4th 33, 44 [90 Cal.Rptr.2d 15], and *Pensinger v. Bowsmith, Inc.* (1998) 60 Cal.App.4th 709, 719 [70 Cal.Rptr.2d 531].) This principle is derived from the United States Supreme Court's holding in *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792 [93 S.Ct. 1817, 36 L.Ed.2d 668].

Plaintiff attempts to distinguish these authorities by correctly noting that in the overwhelming majority of instances, the issue arose in the context of a summary judgment. Plaintiff therefore argues that if the matter goes to trial, he is no longer required to prove his qualification to be hired but instead need only establish the elements of discrimination set forth in BAJI No. 12.12, the instruction which the trial court in this case gave and the text of which we set forth earlier. Plaintiff is incorrect. He overlooks the analysis in *Caldwell v. Paramount Unified School Dist.* (1995) 41 Cal.App.4th 189 [48 Cal.Rptr.2d 448].

*Caldwell* involved a claim an employee had been discharged in violation of the FEHA because of age discrimination. The matter was tried and the jury returned a defense verdict. The trial court subsequently granted the plaintiff's motion for a new trial based upon the finding that it had incorrectly instructed the jury on the burden of proof for employment discrimination. In reviewing that order, the appellate court was required to determine what constitutes a prima facie case for discrimination and what are proper

issues for the jury to decide. The appellate court held: "[W]hether or not a plaintiff has met his or her prima facie burden, and whether or not the defendant has rebutted the plaintiff's prima facie showing, are questions of law for the trial court, not questions of fact for the jury." (41 Cal.App.4th at p. 201.) The court noted that while traditionally this issue is tested in a summary judgment proceeding (*id.* at pp. 202-203), a pretrial motion is *not* the only circumstance in which the trial court can be called upon to resolve this question of law. Specifically, the court held that both a nonsuit following the plaintiff's case-in-chief or a motion for a directed verdict following the defendant's case-in-chief are appropriate vehicles to raise this question of law. (*Id.* at pp. 203-204.) "That is to say, if the plaintiff cannot make out a prima facie case, the employer wins as a matter of law. . . . In th[at] instance[,] no fact finding is required, and the case will never reach a jury." (*Id.* at p. 204.)

. A similar analysis is found in the Comment to BAJI No. 12.01 (1997 new) (8th ed. 1994) "Employment Discrimination—Disparate Treatment." It states:

"Care must be taken in distinguishing between the 'prima facie' elements of a claim for employment discrimination and the 'essential' elements of the same case which the jury must decide.

"Whether a plaintiff has met his or her prima facie burden and whether or not the defendant has rebutted the plaintiff's prima facie showing, are questions of law for the trial court and not questions of fact for the jury.

"The prima facie burden that rests upon plaintiff will depend on the facts. For example, if the adverse decision is a failure to hire or promote, the plaintiff has as part of his or her prima facie case, the burden of producing evidence that he or she was qualified for the employment or the promotion."

In a very recent decision involving an age discrimination claim brought under the FEHA, the California Supreme Court noted its approval of this approach. Relying, in part, upon *Caldwell v. Paramount Unified School Dist., supra,* 41 Cal.App.4th 189, the court wrote: "*At trial,* the *McDonnell Douglas* test places on the plaintiff the initial burden to establish a prima facie case of discrimination. *This step is designed to eliminate at the outset the most patently meritless claims, as where the plaintiff . . . was clearly unqualified . . . .* [Citations.]" (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 354 [100 Cal.Rptr.2d 352, 8 P.3d 1089], italics added.)

Plaintiff's argument that the Legislature's recent enactment of Government Code section 12926.1 has somehow abrogated the requirement that he

establish his qualification for the position is meritless. Nothing in the text of the statute explicitly so provides. The statute simply states the public policy that the FEHA is to be construed to provide broader protection than the federal law (Americans with Disabilities Act) and that the FEHA explicitly covers those who are "erroneously or mistakenly believed to have any physical or mental condition that limits a major life activity." (Gov. Code, § 12926.1, subd. (d).)

To sum up, plaintiff was required to prove as part of his prima facie case of disability discrimination brought under the FEHA that he was qualified to be hired as a police officer. The resolution of that issue is a question of law for the trial court to resolve. The defense may raise the point through a motion for a nonsuit or a directed verdict. In this case, the defense raised the point by bringing both motions, each of which was denied by the trial court.

■ This takes us to the next issue: did the trial court correctly deny the motion for a directed verdict? We conclude it erroneously denied the motion. The uncontradicted evidence established plaintiff had failed the sound localization test he had taken as part of his initial application. Failure of that test is a basis upon which to deny an applicant a job. Plaintiff was, in fact, informed he had failed the test and therefore would not be offered a job. Thereafter, through a clerical error, plaintiff was incorrectly offered a job. When the error was later discovered, he was discharged. Simply stated, there was no discharge based upon a disability. Instead, there was a discharge based upon the finding the LAPD had erred in hiring plaintiff at the outset because he had failed one of the required medical exams.

Contrary to what the trial court found when it denied City's directed verdict motion, there was no conflict in the evidence on this point. To find a conflict, the court relied upon Officer Grant's favorable testimony about plaintiff's performance as a probationary police officer and his opinion that plaintiff's hearing impairment did not negatively affect that performance. This evidence was irrelevant as a matter of law to the dispositive question: was plaintiff qualified to be hired as a police officer? That is a matter solely to be determined by the police department itself. The opinion of an individual police officer is simply irrelevant on that point.[4] It is within the discretion of the LAPD to set physical criteria for the hiring process.[5] It did so. Plaintiff failed to meet one of those basic criteria. His subsequent hiring

---

[4]In his brief, plaintiff relies not only upon Officer Grant's testimony but that of other officers as well as satisfactory job evaluations he received to show that he was qualified. This approach misses the mark for the same reasons stated above.

[5]Statutory law recognizes this fundamental principle. While Government Code section 12940 provides that "[i]t shall be an unlawful employment practice, unless based upon a bona fide occupational qualification, . . . [¶] [f]or an employer, because of the . . . physical

and training was attributable solely to a clerical error. When that error was discovered, he was discharged. In sum, there was no disability discrimination because plaintiff was never initially qualified for the position from which he was discharged.

Consequently, this is not, as plaintiff argues, a situation of an employee properly hired who subsequently suffers an adverse employment decision because of his disability. (Compare *Ackerman v. Western Elec. Co., Inc.* (9th Cir. 1988) 860 F.2d 1514, upon which plaintiff places great reliance.) Instead, this situation involves an individual who was never qualified to be hired from the outset. The fact that the initial disqualifying criterion may also constitute a physical disability is irrelevant. In other words, this is no different from a situation in which the LAPD subsequently discovers that an employee lacked the basic qualification criteria of either being an American citizen or being a high school graduate or being free of any felony convictions and then discharges that individual for failing to meet the initial hiring requirement. In none of those situations would City be required to prove why it should not otherwise overlook or accommodate the employee's failure to meet that initial qualification. Consequently, in this case there is no need for us to discuss whether City properly tried to accommodate plaintiff's disability or whether his disability rendered him incapable of performing any duties (e.g., desk work) as a police officer because City had no obligation to explore those options.

In a similar vein, we reject plaintiff's claim he was not obligated to present a prima facie case of disability discrimination because "there is direct evidence of discrimination": City concedes it discharged him due to his hearing impairment. In *this case*, that concession is not evidence of a discriminatory action; instead, it is evidence that City recognized it had hired plaintiff based upon the mistaken assumption he had passed the sound localization test and that it subsequently corrected that error.

One last point urged by plaintiff needs to be clarified: his *misplaced* reliance upon *Sterling Transit Co. v. Fair Employment Practice Com.* (1981)

disability . . . of any person, . . . to discharge the person from employment . . . ," subdivision (a)(2) to that section expressly creates an exception to that liability-creating rule by providing: "This part does not prohibit an employer from refusing to hire or discharging an employee who, because of the employee's medical condition, is unable to perform his or her essential duties even with reasonable accommodations, or cannot perform those duties in a manner that would not endanger the employee's health or safety or the health or safety of others even with reasonable accommodations. Nothing in this part shall subject an employer to any legal liability resulting from the refusal to employ or the discharge of an employee who, because of the employee's medical condition, is unable to perform his or her essential duties, or cannot perform those duties in a manner that would not endanger the employee's health or safety or the health or safety of others even with reasonable accommodations."

121 Cal.App.3d 791 [175 Cal.Rptr. 548]. In that case, an employer had an absolute rule prohibiting employment of individuals with back problems, even if the problem was not disabling. A prospective employee challenged the very existence and use of that rule by claiming it was not based on bona fide occupational qualifications and was not necessary to prevent a potential employee from endangering his health. In contrast, our plaintiff never made in the trial court a similar *facial* challenge to LAPD's requirement that an applicant pass the sound localization test. Plaintiff did not contend that City lacked authority to set such basic hiring criteria or that this particular criterion on its face violated the FEHA. In any event, given the public safety concerns involved with the day-to-day work of a patrol officer (the position for which plaintiff applied), LAPD's requirement that an applicant possess a certain level of hearing appears eminently reasonable.

Plaintiff was able to parlay City's mistake into a short stint as a probationary police officer. Common sense precludes him from further parlaying that mistake into a judgment against City simply because City discovered its hiring mistake and rectified it by discharging him.

■ When the trial court erroneously denies a defense motion for a directed verdict and permits the matter to proceed to a jury verdict in favor of the plaintiff, the remedy on appeal is to direct the court to enter judgment in favor of the defendant. (*Adams v. City of Fremont* (1998) 68 Cal.App.4th 243, 263, & 288 [80 Cal.Rptr.2d 196].) This conclusion renders it unnecessary to discuss the remaining contentions. (*Id.*, at p. 288, fn. 40.)

### DISPOSITION

The judgment entered on October 15, 1998, in favor of plaintiff Eugene Quinn and the postjudgment order entered on January 19, 1999, awarding plaintiff Eugene Quinn attorney fees and costs are reversed and the trial court is directed to enter judgment in favor of defendant the City of Los Angeles. City to recover its costs on appeal.

Epstein, J., and Curry, J., concurred.

A petition for a rehearing was denied November 22, 2000, and respondent's petition for review by the Supreme Court was denied January 10, 2001. Mosk, J., and Kennard, J., were of the opinion that this petition should be granted.