Filed 11/9/22

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| LA VONYA PRICE, | |
| Plaintiff and Appellant, | E076784 |
| v. | (Super. Ct. No. CIVDS1900178) |
| VICTOR VALLEY UNION HIGH SCHOOL DISTRICT, | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of San Bernardino County. Bryan F. Foster, Judge. Affirmed in part, reversed in part.

Taylor Labor Law, Christopher W. Taylor, Parham Barkhordar, Taylor H. White and Philip Horlacher, for Plaintiff and Appellant.

Walsh & Associates, Dennis J. Walsh and Wendy K. Marcus, for Defendant and Respondent.

# I.

## INTRODUCTION

La Vonya Price worked intermittently as a part-time substitute special education aide at the Victor Valley Unified School District (the District) before applying for a full-time position. She received an offer for a full-time position that was contingent on passing a physical exam. When she failed the physical exam for not being "medically suitable for the position," the District rescinded the offer, terminated her as a substitute, and disqualified her from any future employment with the District.

Price sued the District for retaliation and various disability-related claims, but the trial court granted summary judgment to the District. Price appeals, and we affirm in part and reverse in part.

# II.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Facts*

Price suffered a serious stroke in 2003 that initially left her paralyzed. After years of treatment, she eventually regained the use of her body and relearned how to speak, stand, and walk, yet she did not fully recover. Price suffered some permanent paralysis, which limited her ability to walk and the use of her left foot. Throughout 2005 and 2006, Price had to use a walker and a wheelchair because of her limited mobility. By 2007, Price's condition had improved, but she still struggled with grasping and holding items, although she could hold small items without them falling.

Price first worked part-time for the District between August 2006 and September 2006 as a substitute para-educator for special needs students. She was not required to take or pass a physical examination for the position, and she did not tell the District she had a disability or any medical restrictions.

In the fall of 2007, Price worked for the District on a long-term substitute assignment (about eight hours for 35 days). She left the position because of problems with swelling in her knee, which required her to wear a brace full-time. Price, however, did not tell anyone at the District about her disability or medical restrictions.

Price worked for a different school district in 2013 as a substitute para-educator for special needs students. She was not required to take a physical examination for the position and, again, she did not tell anyone at that school district about her disability or medical restrictions.

Price did not work for the District again until February 2018, when she was hired as a substitute Instructional Assistant for special education students. Price was assigned to work one-on-one with an autistic student, who would sometimes run away from teachers and aides, including Price.[1]

Although she considered herself disabled, Price stated in her application that she did not have a disability that needed accommodations because she believed she did not need any at the time. Price again did not tell anyone at the District that she had a

---

[1] The parties informally refer to students who have a tendency to run away from people as "runners."

3

disability or needed an accommodation, even though at the time she could only lift a few pounds with her left hand, she could fall if she had to jog without holding onto something, and she could work only 20 to 25 hours per week because of her medical issues. Because she applied for a substitute position, Price did not have to pass a physical examination.

In July or August 2018, Price applied and interviewed for a full-time position as an Instructional Assistant for special needs students. In her application, she stated that she left her job in 2010 because of a "disability," but she also stated that she did not have a current disability that required accommodations. Price was offered the position conditioned on certain screening procedures, including passing a physical examination, which is required for all new full-time hires at the District.

An independent physician's office conducted Price's physical examination. The District provided the physician with a description of the position Price had been offered to determine whether she was qualified to perform its physical requirements. Physician's assistant Johnathan Luna administered Price's physical examination.

During the examination, Price told Luna that she had a disability and told him about her medical history, including that she had suffered a stroke. Luna then administered a lifting test and balance test.

After the examination, Luna prepared a two-page report. On the first page, Luna stated that Price passed the "lift & carry" test, but failed the "physical" test. Luna indicated that Price had a "balance deficit, strength deficit in R leg." In the section on the

4

second page concerning the items "performed and results reviewed," Luna wrote, "Deficit in RLC, balance, ↑ fall risk." Based on the examination, Luna determined that Price was "NOT medically suitable for the position."

Luna sent his report to the District. The District's Director of Classified Personnel, DeShawn Dickinson, read Luna's report. After reading the report, Dickinson decided to rescind Price's job offer because the District will not hire anyone who fails either of the tests administered during the physical examination. If someone who has received an offer contingent on passing the physical examination fails either test, the offer is automatically withdrawn.

Dickinson met with Price later that week. Dickinson told Price that the District had rescinded her job offer because she failed the physical test. He made it "very clear" that Price could not challenge the decision.

Price asked Dickinson for more information on why Luna determined she failed the physical test. Dickinson replied, "'I don't know that because I'm not the doctor. You would need to contact them.'" Price told Dickinson that she disagreed with Luna's report, noted that she had successfully performed the job as a substitute, and that she could consult her own doctor about whether she was medically qualified for the job. Dickinson said he would not consider information from Price's doctor and told her, "[you are] a liability." When Price asked him to explain what he meant by that, Dickinson repeated three times that Price was "a liability."

5

Dickinson then gave Price a letter that explained the District rescinded her job offer because she failed the physical examination. The letter also explained that Price's failing the physical examination disqualified her from her current position as a substitute and any future positions with the District.

B. *Procedural History*

Price first sued the District for seven claims under the Fair Employment and Housing Act (FEHA; Gov. Code § 12940 et seq.[2]). After the District's successful demurrers (which Price does not challenge on appeal), only five of Price's FEHA claims remained: (1) disability discrimination; (2) failure to accommodate a disability; (3) failure to engage in the interactive process; (4) retaliation; and (5) failure to prevent discrimination and retaliation. The trial court granted the District's motion for summary judgment and entered judgment for the District. Price timely appealed.

III.

DISCUSSION

Price contends the trial court erroneously granted summary judgment to the District because there are triable issues of fact concerning all of her claims. We agree as to her first claim for disability discrimination, but disagree as to the rest of her claims.

A. *Standard of Review*

"A party moving for summary judgment bears the burden of persuasion there is no triable issue of material fact and is entitled to judgment as a matter of law. A defendant

---

[2] All further statutory references are to the Government Code.

6

satisfies this burden by showing one or more elements of the cause of action in question cannot be established or there is a complete defense to that cause of action. If the defendant meets this initial burden, the opposing party must then make a prima facie showing of the existence of a triable issue of material fact. [Citation.] [¶] We review the denial of a motion for summary judgment de novo. [Citation.] We strictly construe the moving party's affidavits and liberally construe the opposing party's affidavits. We accept as undisputed facts only those portions of the moving party's evidence that are not contradicted by the opposing party's evidence." (*City of San Diego v. Superior Court* (2006) 137 Cal.App.4th 21, 25.) Thus, "[w]hen deciding whether to grant summary judgment, the court must consider all of the evidence set forth in the papers (except evidence to which the court has sustained an objection), as well as all reasonable inferences that may be drawn from that evidence, in the light most favorable to the party opposing summary judgment." (*Avivi v. Centro Medico Urgente Medical Center* (2008) 159 Cal.App.4th 463, 467.)

B. *Disability Discrimination*

FEHA prohibits an employer from refusing to hire an applicant based on the applicant's actual or perceived physical disability. (§ 12940, subd. (a).) To assess Price's FEHA discrimination claim, we use the *McDonnell Douglas* burden-shifting framework.[3] (See *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792, 802; *Guz v.*

---

[3] Price argues for the first time on appeal that we should not use the *McDonnell Douglas* test here because she has presented "direct evidence" of the District's discriminatory reasons for rescinding her job offer. (See *Wallace v. County of Stanislaus*

*[footnote continued on next page]*

7

*Bechtel Nat. Inc.* (200) 24 Cal.4th 317, 354.) To succeed on her claim under that framework, Price has the initial burden of establishing a prima facie case of disability discrimination. (*Moore v. Regents of University of California* (2016) 248 Cal.App.4th 216, 234-235 (*Moore*).) If Price satisfies her burden, the burden shifts to the District to prove that it had a legitimate, nondiscriminatory reason for subjecting Price to an adverse employment action. (*Id.* at p. 235.) If the District satisfies its burden, the burden shifts back to Price to prove that the District's stated reason for the action was pretextual and that its actual reason was discriminatory. (*Id.* at p. 236.)

### 1. *Prima Facie Case*

Under the *McDonnell Douglas* test, Price has the initial burden of establishing a prima facie case of disability discrimination by showing that she "(1) suffered from a disability or was regarded as suffering from a disability, (2) could perform the essential duties of a job with or without reasonable accommodations, and (3) was subjected to an adverse employment action because of the disability or perceived disability." (*Glynn v. Superior Court* (2019) 42 Cal.App.5th 47, 53, fn. 1.) To meet her burden, Price only had to offer sufficient circumstantial evidence that raises a reasonable inference of

_____

(2016) 245 Cal.App.4th 109, 123, fn. omitted ["The three-stage [*McDonnell Douglas*] framework and the many principles adopted to guide its application do not apply in discrimination cases where, like here, the plaintiff presented direct evidence of the employer's motivation for the adverse employment action."].) The District contends Price forfeited the argument by not raising it in the trial court. We need not decide whether the "direct evidence" principle supplants the *McDonnell Douglas* test here or whether Price forfeited the argument because triable issues of fact exist that preclude summary judgment under the *McDonnell Douglas* test.

8

discrimination.  (*Hersant v. Department of Social Services* (1997) 57 Cal.App.4th 997, 1002.)  We conclude triable issues of material fact exist as to all three elements.

2.  *Disability*

FEHA protects job applicants and employees from "discrimination due to an actual or perceived physical or mental impairment that is disabling, potentially disabling, or perceived as disabling or potentially disabling."  (§ 12926.1, subd. (b).)  Thus, "the first essential element of a claim for unlawful disability discrimination is that the plaintiff is disabled or *regarded as* disabled" or *potentially* disabled by the employer.  (*Diffey v. Riverside County Sheriff's Dept.* (2000) 84 Cal.App.4th 1031, 1034, disapproved on other grounds by *Colmenares v. Braemar Country Club, Inc.* (2003) 29 Cal.4th 1019, 1031, fn. 6, italics added; *Brown v. Los Angeles Unified School District* (2021) 60 Cal.App.5th 1092, 1104.)

Price contends, and we agree, that a jury could reasonably conclude that the District regarded her as disabled.  Price failed the "physical" test during her physical examination, and Luna noted that she had balance and strength deficits in her right leg, which placed her at an increased risk of falling.  Luna thus concluded that Price was not "medically suitable for the position."  Based on Luna's report, Dickinson rescinded Price's job offer.  From this evidence, a jury could reasonably conclude that the District regarded Price as having or potentially having a physical disability that affected her balance, caused weakness in her right leg, and limited her work-related abilities.  Thus, a

9

triable issue of fact exists as to whether the District regarded Price as disabled or potentially disabled.

### 3. *Essential Functions*

A triable issue of fact also exists as to whether Price could perform the essential functions of the position she was offered without reasonable accommodation. Relying on *Quinn v. City of Los Angeles* (2000) 84 Cal.App.4th 472 (*Quinn*), *Hastings v. Department of Corrections* (2003) 110 Cal.App.4th 963 (*Hastings*), and *Anthony v. Trax International Corporation* (9th Cir. 2020) 955 F.3d 1123, the District asserts the fact that Price failed her physical examination means that she was not qualified to perform the job. We disagree.

*Anthony v. Trax International Corporation*, *supra*, 955 F.3d 1123, did not involve an employee who failed a physical examination. The employer in that case discovered during litigation, long after any alleged discrimination, that the employee lacked a required degree for his position, so he was indisputably unqualified. (*Id*. at p. 1128.) The issue on appeal was therefore whether such after-acquired evidence that an employee does not satisfy the prerequisites for the position, including educational background, renders the employee ineligible for relief. (*Ibid*.)

In *Hastings*, it was "undisputed that [the plaintiff] was unable" to do the job with or without accommodations. (*Hastings*, *supra*, 110 Cal.App.4th at p. 971.) In fact, his own physician found he was physically incapable of performing the required duties. (*Id*. at p. 971, fn. 11.)

In *Quinn*, "there was no conflict in the evidence" the plaintiff-police officer was not qualified for the position because he failed a "sound localization test" due to a hearing impairment. (*Quinn*, *supra*, 84 Cal.App.4th at pp.482, 476.) "The ability to localize sound is particularly significant to police officers in split second, life-threatening situations when an officer cannot clearly see." (*Id*. at p. 476.) The physician who administered the test therefore concluded that the plaintiff's inability to localize "sounds in a split second or in a life threatening situation . . . represented an imminent and serious hazard" to himself, other officers, and the public. (*Ibid*.) Despite failing the test, the Los Angeles Police Department (LAPD) accidentally hired the plaintiff due to a clerical error, but his hearing impairment interfered with his ability to hear the police radio and his partner's instructions so significantly that he was reassigned to a desk job before being terminated. (*Id*. at pp. 476-477.) The *Quinn* court held that the plaintiff's termination was lawful because he "was never initially qualified for the position" as a matter of law. (*Id*. at p. 483.)

The District reads *Quinn* to stand for the broad proposition that an employer may always impose physical requirements as a condition of employment and thus may always refuse to hire someone who does not meet those requirements. We disagree. Although the *Quinn* court noted that the LAPD had the discretion "to set physical criteria for the hiring process" and that the plaintiff "failed to meet one of those basic criteria," the court did not hold that employers have unfettered discretion to deny employment to anyone who fails any physical test, as the District suggests. (*Quinn*, *supra*, 84 Cal.App.4th at p.

11

482.) Rather, the *Quinn* court recognized only the "fundamental principle" that employers may deny a position to an applicant who cannot safely perform the essential functions of the job due to a medical condition. (*Id*. at p. 482, fn. 5.) There was no genuine dispute that the *Quinn* plaintiff could not do so. (*Id*. at p. 482.) Indeed, he did not "challenge . . . LAPD's requirement that an applicant pass the sound localization test" and "did not contend that [LAPD] lacked authority to set such basic criteria." (*Id*. at p. 484.)

In short, it was undisputed that the plaintiffs in *Hastings* and *Quinn* could not perform the essential functions of their positions because of a physical disability. That is not the case here.

"Evidence of whether a particular function is essential includes, but is not limited to, the following: [¶] (A) The employer's judgment as to which functions are essential. [¶] (B) Written job descriptions prepared before advertising or interviewing applicants for the job. [¶] (C) The amount of time spent on the job performing the function. [¶] (D) The consequences of not requiring the incumbent to perform the function. [¶] (E) The terms of a collective bargaining agreement. [¶] (F) The work experiences of past incumbents in the job. [¶] (G) The current work experience of incumbents in similar jobs." (§ 12926, subd. (f)(2).) Because the determination of essential job functions is a "'highly fact-specific inquiry,'" it is usually an issue of fact for the jury to decide. (*Lui v. City and County of San Francisco* (2012) 211 Cal.App.4th 962, 971; *Hastings*, *supra*, 110 Cal.App.4th at p. 967, fn. 6.)

12

The District argues Price could not perform the essential functions of a special education Instructional Assistant because of her medical restrictions. In particular, the District contends the job had physical demands that Price could not meet, namely, running after students.[4] Even if true, Price has raised a triable issue of fact as to whether this was an essential function of a full-time Instructional Assistant.

As the District notes, the part-time and full-time Instructional Assistant positions have the same duties and responsibilities. As a part-time Instructional Assistant, Price was assigned to a one-on-one position with a "runner," and she successfully performed that position before being offered the full-time position, even though she frequently had to run after students. When Price told the District that her student habitually ran out of the classroom, the District instructed her to try to keep the student on task and redirect her behavior. If Price could not catch the student when she ran away, she notified security, who would monitor the student until Price caught-up with her and reoriented her. Price, however, could keep up with the student enough so that Price could keep an eye on her and ensure that she was not harming anyone.

In our view, these facts alone create a triable issue of material fact about whether running after students is an essential function of a full-time Instructional Assistant, like

_____

[4] In its recitation of the facts in its respondent's brief, the District notes that special education Instructional Aides like Price may have to lift students out of wheelchairs and help change students' diapers. But in the argument section of its brief, the District does not contend that these were essential functions of the job. The District also notes in the argument section of its brief that Price had to be on her feet for about 60 percent of the day and stand for 30-minute periods and walk for 45-minute periods, but the District does not argue she could not meet these requirements.

13

the District insists. To begin with, Price successfully performed the position in a part-time capacity before being offered a full-time position, and both positions have the same duties. The District presumably would not have hired her for that position if it thought she had not successfully performed as a part-time Instructional Assistant. Second, there is a genuine dispute as to whether Price would need to chase after students or whether she could successfully use other, non-physical techniques to stop students from running away. Third, there is a genuine dispute as to whether Price could rely on other District employees, such as security guards or counselors, to run after students if needed.

More importantly, there is a genuine dispute of material fact as to whether Price could have worked in a setting without physical demands that she could not meet. Price notes that special education Instructional Assistants like her are placed in one of five Special Needs Settings: (1) Severely Handicapped; (2) Emotionally Disturbed; (3) Special Day Class (SDC); (4) Autistic; and (5) Resource Specialist. An Instructional Assistant's responsibilities vary from classroom to classroom, in part because a special education teacher might have up to seven Instructional Assistants in a classroom. Because each Special Needs Setting is based on the students' particularized needs, the "most important" duties of an Instructional Assistant differ depending on the Setting.

For instance, Instructional Aides in the Severely Handicapped classroom might work with students in wheelchairs who need to be diapered and moved in and out of their wheelchairs. Students in the Emotionally Disturbed classroom may be "runners," while students in the SDC generally only need help with their academic assignments because

14

they may have "some behavioral problems and are low academically." The duties vary in SDC because there are "different levels of SDC kids," some of whom are "high-functioning" while some are "low-functioning." Similarly, some students in the Autistic setting may not need one-on-one supervision or physical assistance and may only need academic help. Students in the Resource Specialist setting, however, are generally the highest functioning of special needs students and usually only need assistance with academic issues.

In other words, Price possibly could have been placed in three Special Needs Settings (SDC, Autistic, or Resource Specialist) where students do not require *any* physical assistance or physical supervision. This shows that at least some Instructional Assistant positions and Special Education Settings may not require that every Instructional Assistant be able to run after students (because the students are not "runners"), lift students in and out of wheelchairs (because no student is wheelchair-bound), or change students' diapers (because no student wears them). A triable issue of fact thus exists as to whether Price could have successfully performed as an Instructional Assistant in one of the five Special Needs Settings despite her physical limitations.

15

4. *Adverse Employment Action*

The third and final element of the prima facie case of disability discrimination that Price must establish is that her disability was a substantial motivating reason for the District's decision to subject her to an adverse employment action. (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1043.) The parties agree that the revocation of Price's job offer was an adverse employment action.[5] (See *ibid*.) We conclude there is a triable issue of fact as to whether her disability was a substantial motivating reason for the District's decision to rescind the offer.

It is undisputed that Dickinson decided to rescind Price's job offer because of Luna's report, which stated that Price was "NOT medically suitable for the position" because of the strength and balance deficits in her right leg. According to Price, when she asked for more of an explanation about his decision, Dickinson told her at least four times, "you are a liability." Taken together, a reasonable jury could find that the District rescinded Price's job offer because of an actual or perceived disability or potential disability. A triable issue of tact thus exists as to whether Price's actual or perceived disability was a substantial motivating reason for the adverse employment action she suffered. As a result, we conclude Price has satisfied her initial burden of establishing a prima facie case of disability discrimination.

---

[5] Price also contends the District's decision to terminate her substitute position was an adverse employment action. We need not consider the issue because there is no dispute revocation of her offer was an adverse employment action.

16

## 5. *Pretext*

We assume without deciding that the District satisfied its burden at the second stage of the *McDonnell Douglas* analysis by showing that it had a legitimate, nondiscriminatory reason for rescinding Price's job offer. We skip to the third stage because Price can survive summary judgment by raising a triable issue of fact as to whether the District's proffered reason for rescinding the Price's job offer—that she failed the physical examination—was pretextual. (*Moore*, *supra*, 248 Cal.App.4th at p. 250.) We conclude that she has done so.

At the third stage of the *McDonnell Douglass* test, Price had to produce substantial evidence that the District's proffered reasons for subjecting her to an adverse employment action "were untrue or pretextual, or that the [District] acted with a discriminatory *animus*, such that a reasonable trier of fact *could* conclude that the employer engaged in intentional discrimination or other unlawful action.'" (*Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 861, second italics added.) Price satisfied this burden with direct or circumstantial evidence. (*Ibid.*)

Price emphasizes her testimony that Dickinson told her "you are a liability" at least four times during their meeting when he informed her that he was rescinding her job offer because she failed the physical examination. She contends this testimony, without more, created a triable issue of material fact as to whether the District's stated reasons for rescinding the job offer were pretextual under *Moore*. We agree.

17

In *Moore*, the plaintiff told her supervisor about her heart condition when she began wearing an external defibrillator to work. (*Moore*, *supra*, 248 Cal.App.4th at p. 240.) She claimed that when she told her supervisor that she no longer needed to wear the device, the supervisor responded that she had already asked human resources "'how to handle [the plaintiff] *as a liability to the department*.'" (*Id*. at p. 241.) The plaintiff was terminated and sued for disability discrimination under FEHA. (*Ibid*.) The *Moore* court held that the jury could reasonably find that the supervisor's reference to the plaintiff being a "liability" was evidence of a discriminatory animus toward the plaintiff based on her perceived disability. (*Ibid*.) As a result, the *Moore* court reversed the summary judgment for the employer because a reasonable jury could find that the employer's stated legitimate, nondiscriminatory reasons for terminating the plaintiff were pretextual. (*Ibid*.)

We agree with Price that *Moore* directly applies here, and we find it persuasive. Like the supervisor in *Moore* who called the plaintiff a "liability," Price contends that Dickinson told her four times, "you are a liability" while telling her that he was rescinding her job offer because she failed the physical examination. A reasonable jury could find that Dickinson "believed that [Price] was a 'liability' . . . as a result of her [medical] condition, and, based on that conclusion, could infer that the proffered reasons for [Price's] termination were not the real reasons for the termination." (*Moore*, *supra*, 248 Cal.App.4th at p. 241.)

18

As a result, Price satisfied her burden of showing a triable issue of fact exists at the third stage of the *McDonnell Douglas* test. We therefore reverse the judgment and direct the trial court to enter an order denying the District's motion for summary adjudication of Price's first cause of action for disability discrimination.

6. *Failure to Engage in the Interactive Process*

Price contends the District failed to engage in the interactive process before rescinding her job offer. We conclude the District was under no obligation to do so under FEHA.

FEHA requires employers to reasonably accommodate an employee's disability unless doing so would impose an undue hardship on the employer. (§ 12940, subd. (m).) The employer also must "engage in a timely, good faith, interactive process with the employee . . . to determine effective reasonable accommodations." (§ 12940, subd. (n).)

"Two principles underlie a cause of action for failure to provide a reasonable accommodation. First, the employee must request an accommodation. [Citation.] Second, the parties must engage in an interactive process regarding the requested accommodation and, if the process fails, responsibility for the failure rests with the party who failed to participate in good faith." (*Gelfo v. Lockheed Martin Corp.* (2006) 140 Cal.App.4th 34, 54 (*Gelfo*).)

A corollary to these rules is that "[u]nless a disability is obvious, it is *the employee's* burden to initiate the interactive process." (*Kao v. University of San Francisco* (2014) 229 Cal.App.4th 437, 450 (*Kao*), italics added.) "'Where the disability,

19

resulting limitations, *and* necessary reasonable accommodations, are not open, obvious, and apparent to the employer, . . . the initial burden rests primarily upon the employee . . . to specifically identify the disability *and* resulting limitations, *and* to suggest the reasonable accommodations.'" (*Scotch v. Art Institute of California* (2009) 173 Cal.App.4th 986, 1013, italics added.) And "[w]hen a disability is not obvious, the employee must submit 'reasonable medical documentation confirm[ing] [its] existence.'" (*Kao*, *supra*, at p. 450.)

Price does not argue that her disability, resulting limitations, and necessary reasonable accommodations should have been obvious to the District. Nor can she. Price cannot "plausibly claim it should have been obvious to [the District] that [s]he was disabled because [s]he never admitted any disability in the workplace." (*Kao*, *supra*, 229 Cal.App.4th at p. 450.) Instead, Price stated on her application for the full-time Instructional Assistant position that she did not have any disabilities or limitations and did not need any accommodations.

Because Price's disability, resulting limitations, and necessary reasonable accommodations were not open and obvious, she had the initial burden to initiate the interactive process. (*Kao*, *supra*, 229 Cal.App.4th at p. 450.) She did not meet that burden because she never told the District she had a disability, did not seek an accommodation for one, and did not tell the District of her physical limitations. (*Ibid.*) Rather, she told the District on her application for the full-time Instructional Assistant position that she did not have a disability and did not need accommodations. She also did

not submit any medical documentation confirming the existence of a non-obvious disability, as FEHA requires. (*Kao*, *supra*, 229 Cal.App.4th at p. 450.) The trial court therefore properly granted summary adjudication to the District on Price's claim for failure to engage in the interactive process. (*Ibid.*)

Price disagrees, arguing that Dickinson "obstructed" her attempts to engage in the interactive process in good faith. She notes that she disagreed with Luna's report, offered to get a second opinion from her physician, and contacted Dickinson several times after their meeting to discuss Luna's findings. But because Price's disability was not obvious, it was incumbent on her to tell the District of her disability, resulting limitations, and reasonable accommodations. (*Scotch v. Art Institute of California*, *supra*, 173 Cal.App.4th at p. 1013.) She did not do so, and instead denied having any disability or limitation that needed to be accommodated. She therefore cannot succeed on her claim for failure to engage in the interactive process. (See *Kao*, *supra*, 229 Cal.App.4th at p. 450 ["The requirement for an interactive process was not implicated here because Kao never acknowledged having a disability or sought any accommodation for one."].)

Price contends that *Gelfo* shows that the District violated its duty to engage in the interactive process, but that case is distinguishable. There, the plaintiff suffered a workplace back injury that left him with physical limitations. (*Gelfo*, *supra*, 140 Cal.App.4th at p. 40.) As part of his workers' compensation claim, he was determined to be "'permanent and stationary,'" "'permanently disabled,'" and precluded from "'heavy work.'" (*Ibid.*) About a year later, however, he successfully completed a 10-week

21

training program with his employer during which he performed all of the regular physical duties of a fabricator "without adverse consequences to his back." (*Id*. at p. 41.)

The plaintiff was offered a fabricator position, but it was revoked two days later because "a review of his file revealed medical restrictions imposed by his physician that were incompatible with the physical demands of the fabricator position." (*Gelfo*, *supra*, 140 Cal.App.4th at p. 42.) He told his employer that he had no limitations because his back was no longer bothering him and his physician said the restrictions were unnecessary. (*Ibid*.) His employer responded that it could accommodate some, but not all of his restrictions. (*Id*. at p. 43.) The plaintiff asked his employer to reconsider its decision because it was "misinformed about his medical restrictions." (*Ibid*.) The employer responded by acknowledging that it had mistakenly relied on an outdated list of the plaintiff's limitations, but nonetheless concluded he had a physical limitation that could not be accommodated given his physicians' reports and deposition testimony in the workers' compensation case. (*Ibid*.)

The plaintiff sued for various FEHA claims, including one for his employer's alleged failure to engage in the interactive process. (*Gelfo*, *supra*, 140 Cal.App.4th at p. 44.) After a jury trial, the trial court entered a directed verdict on the claim because the plaintiff "did not have an 'actual' disability." (*Ibid*.) The trial court thus found the employer "had no legal duty to provide a reasonable accommodation to [the plaintiff] or to engage in an interactive dialogue with him." (*Ibid*.)

The *Gelfo* court reversed. (*Gelfo*, *supra*, 140 Cal.App.4th at pp. 55-60.) The court held that employers not only have a duty under FEHA to engage in the interactive process with employees who are actually disabled, but also with employees who they regard as disabled, such as the plaintiff. (*Ibid*.) The trial court thus erred in granting a directed verdict for the employer because (1) it erroneously ruled that the employer had no duty to engage in the interactive process with the plaintiff, who was not "actually disabled," and (2) questions of fact existed as to whether the parties engaged in the interactive process in good faith because the evidence of the parties' interactive efforts and good faith was "conflicting." (*Id*. at p. 62, fn. 23.)

*Gelfo* thus does not support Price's position that the District violated its duty to engage in the interactive process. There was no dispute that in *Gelfo* (1) the employer knew that the plaintiff had medically-documented disabilities and restrictions at one point, (2) the parties engaged in the interactive process, and (3) the employer tried to accommodate the plaintiff based on his documented disabilities and restrictions, but concluded they could not accommodate all of his restrictions. More importantly, the trial court directed a verdict for the employer based solely on its "mistaken determination FEHA does not impose on an employer a duty to engage in discussions with an applicant or employee who is not actually disabled." (*Gelfo*, *supra*, 140 Cal.App.4th at p. 62.)

Here, however, Price denied having a disability or limitations, did not provide the District with any medical documentation of a disability, and did not request any accommodations. And unlike the *Gelfo* trial court, the trial court here did not rule for the

23

District because of an erroneous legal conclusion that the District had no duty to engage in the interactive process with Price because she was not actually disabled. Because any disability Price had was not obvious, she had the burden to tell the District that she had a disability and/or limitation that required accommodations. (*Scotch v. Art Institute of California*, *supra*, 173 Cal.App.4th at p. 1013; *Kao*, *supra*, 229 Cal.App.4th at p. 450.) She failed to satisfy that burden. *Gelfo* does not change that conclusion.

### 7. *Failure to Accommodate*

FEHA requires employers to provide a reasonable accommodations for an applicant's or employee's known disability. (§ 12940, subds. (a), (m).) "Two principles underlie a cause of action for failure to provide a reasonable accommodation. First, the employee must request an accommodation. [Citation.] Second, the parties must engage in an interactive process regarding the requested accommodation and, if the process fails, responsibility for the failure rests with the party who failed to participate in good faith." (*Moore*, *supra*, 248 Cal.App.4th at p. 242; accord, *Doe v. Department of Corrections & Rehabilitation* (2019) 43 Cal.App.5th 721, 738.)

Price acknowledges that she never requested an accommodation from the District. For this reason alone, her failure to accommodate claim fails. (*Moore*, *supra*, 248 Cal.App.4th at p. 242.)

Price contends that, because the District was on notice of her disability, she did not have to request an accommodation under *Prilliman v. United States Airlines, Inc.* (1997) 53 Cal.App.4th 935. We disagree. In *Prilliman*, there was no dispute that the employee

sought accommodation for a disability. (See *Id*. at p. 954.) The parties instead disputed whether the employer reasonably accommodated the employee simply by offering him insured disability leave without exploring any other potential accommodations. (*Ibid*.) The *Prilliman* court found a triable issue of fact existed as to whether the employer could have reasonably accommodated the plaintiff by other means, such as by following its own "policy of attempting to find alternative positions for its employees" who develop a need for accommodations. (*Id*. at pp. 953-954.) *Prilliman* thus does not support Price's position that she did not have the initial burden of requesting an accommodation to succeed on her failure to accommodate claim.

### 8. *Retaliation*

The *McDonnell Douglas* burden-shifting framework applies to FEHA retaliation claims. (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1042.) "To establish a prima facie case of retaliation [under FEHA], the plaintiff must show (1) he or she engaged in a protected activity; (2) the employer subjected the employee to an adverse employment action; and (3) a causal link between the protected activity and the employer's action." (*Akers v. County of San Diego* (2002) 95 Cal.App.4th 1441, 1453.) Price bears the initial burden of proving a prima facie case of retaliation. (*Ibid*.) The retaliatory motive underlying retaliation claims "is 'proved by showing that plaintiff engaged in protected activities, that [their] employer was aware of the protected activities, and that the adverse action *followed* within a relatively short time thereafter.'" (*Fisher v. San Pedro Peninsula Hospital* (1989) 214 Cal.App.3d 590, 615, italics added.)

25

In other words, Price must show that the District took an adverse employment action against her *because* she engaged in protected activity. (*Morgan v. Regents of University of California* (2000) 88 Cal.App.4th 52, 70.)

Price fails to do so. She argues that she engaged in protected activity by asking Dickinson questions about his decision and why he considered her a liability, by offering to consult her personal physician, and by calling Dickinson several times after their meeting to ask how she could provide information from her medical provider about her ability to work.

But, as Price emphasizes, Dickinson decided to "immediately terminate [her] after reading Luna's report" and made it "very clear" during their meeting that she could not challenge that decision. Thus, *according to Price*, Dickinson decided to terminate her before the meeting, in which she allegedly engaged in protected activity and told her that he would not reconsider his position.

In other words, Price implicitly concedes that she engaged in protected activity only *after* Dickinson told her that he was rescinding her job offer, terminating her substitute position, and disqualifying her from any future positions because she failed the physical exam. Price thus cannot show the requisite causal link between her protected activity and any adverse employment activity. (See *Akers v. County of San Diego*, *supra*, 95 Cal.App.4th at p. 1453.) We therefore conclude the trial court properly granted the District summary adjudication on Price's retaliation claim.

### 9. *Failure to Prevent Discrimination and Retaliation*

Price does not mention her fifth cause of action for failure to prevent discrimination and retaliation in her opening brief. We therefore decline to address it and must affirm the trial court's order granting of summary adjudication of the claim. (*Aptos Council v. County of Santa Cruz* (2017) 10 Cal.App.5th 266, 296, fn. 7 ["Issues not raised in the appellant's opening brief are deemed waived or abandoned"]; *Bianco v. California Highway Patrol* (1994) 24 Cal.App.4th 1113, 1125 [appellant bears burden of proving prejudicial error].)

At oral argument, Price's counsel argued that we should address the claim because she sought (and our tentative opinion intended to grant) reversal of the judgment, which necessarily includes reversal of the trial court's order granting summary adjudication on her failure-to-prevent claim. We disagree. Again, Price's opening brief does not mention the claim and provides no argument as to why the trial court's order summarily adjudicating the claim should be reversed. By failing to do so without good cause, Price forfeited any argument concerning her failure-to-prevent claim. (See *Foxen v. Carpenter* (2016) 6 Cal.App.5th 284, 295.)

IV.

DISPOSITION

The judgment is reversed. The trial court is directed to enter an order denying the District's motion for summary judgment, denying summary adjudication of Price's first cause of action for disability discrimination, and granting the District summary

27

adjudication of Price's remaining claims.  The parties shall bear their own costs on appeal.

CERTIFIED FOR PUBLICATION

CODRINGTON
J.

We concur:

RAMIREZ
P. J.

McKINSTER
J.